# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD J. WILSON, CDCR #B-93800 | Case No.:  24-cv-1079-MMA (AHG) |
| Plaintiff, | **ORDER:** |
| vs. | **(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS** |
| JEFF MACOMBER, JAMES HILL, M. COLNIER, JULIAN SALAZAR, GUCKDRIER, AMY CAMPBELL, RANDY, RIVERS, CASTRO, MORREO, DEFENDANT "B", | **[Doc. No. 2]** |
| Defendants. | **(2) DISMISSING COMPLAINT WITHOUT PREJUDICE PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1)** |

## I. INTRODUCTION

Gerald Wilson ("Plaintiff" or "Wilson"), an inmate currently confined at R.J. Donovan Correctional Facility ("RJD") and proceeding *pro se*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, along with a Motion to Proceed *In Forma Pauperis* ("IFP").  Doc. Nos. 1, 2.  In his Complaint, Wilson raises several claims alleging Defendants violated his constitutional rights.  *See id.*  For following reasons, the Court grants Plaintiff's IFP application and dismisses the Complaint without prejudice and with leave to amend.

## II. MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[1]  *See* 28 U.S.C. § 1914(a).  A party may initiate a civil action without prepaying the required filing fee if the Court grants leave to proceed IFP based on indigency.  28 U.S.C. § 1915(a); *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

To proceed IFP, a plaintiff must establish their inability to pay by filing an affidavit regarding their income and assets.  *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015).  Prisoners must also submit a "certified copy of the [prisoner's] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint."  28 U.S.C. § 1915(a)(2).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets.  *See* 28 U.S.C. §§ 1915(b)(1) & (4).  Prisoners who proceed IFP must repay the entire fee in installments regardless of whether their action is ultimately dismissed.  28 U.S.C. § 1915(b)(2); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

In support of his IFP Motion, Plaintiff provided a copy of his prison certificate and trust account statement.  Doc. No. 3.  During the six months prior to filing suit, Plaintiff had an average monthly balance of $16.10, average monthly deposits of $12.32, and an available account balance of $10.00 at the time he filed suit.  *Id.* at 1.  Accordingly, the Court **GRANTS** Plaintiff's IFP motion and assesses an initial partial filing fee of $3.22 pursuant to 28 U.S.C. § 1915(b)(1).  However, *this initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed*. *See*

---

[1] Civil litigants must pay an administrative fee of $55 in addition to the $350 filing fee.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)).  The additional $55 administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on "failure to pay . . . due to the lack of funds available to him when payment is ordered."). The California Department of Corrections and Rehabilitation ("CDCR") must thereafter collect the full balance of the $350 total fee owed in this case and forward payments to the Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

## III.  SCREENING PURSUANT TO 28 U.S.C. § 1915(E) AND § 1915A(B)

### A.  Legal Standard

Pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), the Court must screen a prisoner's IFP complaint and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint to "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id*.

In short, to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named

defendant is liable for the misconduct alleged.  *Id*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## B.    Plaintiff's Allegations

Wilson alleges that on June 20, 2022, he was transferred to RJD from California State Prison, Los Angeles County ("LAC") to attend court proceedings.  Doc. No. 1 at 18.  When those court proceedings concluded on July 18, 2022, Defendant Hill (the warden at RJD at that time) failed to send Wilson back to LAC.  *Id.* at 19.  Plaintiff filed a grievance about the matter, and was informed that he would be "scheduled for [a Unit Classification Committee ("UCC") review]" and that he would be "retained at RJD" until the classification committee reviewed his placement.  *Id.*  Ultimately, the UCC determined Wilson should remain at RJD.  *Id.* at 20.  As a result of being denied a transfer back to LAC, Wilson was deprived of the ability to have contact visitation with his brother, who lives in Pasadena, California and is in poor health.  *Id.*  Defendant Colnier, the program administrator of Facility "C" did not object to Hill's decision and concluded that Wilson was "properly housed at RJD."  *Id.* at 21.  Wilson alleges that Colnier "acted in concert" with Hill in retaliating against him "due to . . . Plaintiff['s] refusal to accept an offer of settlement [and instead,] proceed[] to trial" in another, unspecified case.[2]  *Id.*

On February 9, 2023, Defendant Salazar, an RJD correctional officer, delayed Wilson from taking his usual "incontinent shower" for four-and-a-half hours.  *Id.* at 22.  Specifically, Plaintiff states he suffers from a disability the causes some urinary incontinence during sleep.  As such, he typically takes an "incontinence shower" first thing in the morning, at approximately 6:00 a.m., before breakfast.  *Id.*  But on February

---

[2] Plaintiff does not specify the nature of the "settlement" or "trial" he references.

9, 2023, Salazar refused to let Wilson shower first thing in the morning because he did not turn in a "blue bag."[3]  *Id.*  Wilson tried to explain that he did not use a blue bag for his incontinence but Salazar still refused to let him shower before breakfast and directed Defendant Guckdrier not to allow Wilson to shower until 10:30 a.m.  *Id.* at 22–23.

Plaintiff alleges he was without water in his cell for eight days at some point.  *Id.* at 23.  While the plumbing was being repaired, he was given a bottled water in the morning and in the evenings.  *Id.*  He also alleges he has not had hot water in his cell for "two years and counting."  *Id.*

Wilson states had been interviewed on July 13, 2023 by the "*Armstrong* Court Compliance Sergeant."[4]  *Id.* at 25.  On August 3, 2023, Guckdrier was conducting a morning security check in Plaintiff's housing facility.  *Id.* at 24.  At the same time, Plaintiff was "cleaning off the urine on [himself] due to his medical incontinence episodes."  *Id.*  Wilson had put a "privacy covering" over his cell window.  *Id.*  When Guckdrier saw this during his security check, he told Wilson that if he did not remove the covering, he would issue a Wilson a rule violation report ("RVR") for delaying an officer's duty.  Plaintiff responded that he was "naked due to a medical episode."  *Id.* at 24–25.  Guckdrier told Plaintiff "the warden said he (Officer Guckdrier) is allowed to watch Plaintiff use the toilet."  *Id.* at 25.  He alleges that "every day since the incident he has been harass[ed] and denied the benefit of a program activity" in retaliation.  *Id.*

Wilson states that in early 2024 he had a job as a "chapel clerk."  *Id.* at 26.  The RJD Chaplain, Defendant Campbell, was his "supervisor."  *Id.*  On January 3, 2024, he

---

[3] While Plaintiff does not elaborate on the meaning of "blue bag," it appears to be a reference to a receptacle for waste.

[4] *Armstrong* is one of several pending class actions brought against CDCR officials for violation of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the Constitution by present and future California prisoners and parolees suffering from certain disabilities.  *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1062–63 (9th Cir. 2010); *Clark v. California*, 739 F. Supp. 2d 1168, 1173–74 (N.D. Cal. 2010).

asked Campbell whether she had asked him to report to work that day. *Id.* Campbell told Wilson she had not and asked Plaintiff if he had received his new work assignment yet. *Id.* Wilson asked Campbell who was trying to change his work position and she replied that she had. *Id.* She told Plaintiff his job as chapel clerk was "not working out" because Plaintiff could not "get[] along with the volunteers." *Id.* at 26. Wilson responded that there was only one volunteer he had trouble with, and it was "the Mexican one" who was a former "gang member" and convicted felon.[5] *Id.* Wilson alleges this volunteer, who he identifies by his first name as Defendant "Randy," had ordered him to mop the chapel in the mornings, despite Wilson's disability. *Id* at 27. Wilson told Randy he was "not his supervisor," and filed a grievance against Randy. *Id.* Sometime thereafter, Randy told Wilson that Campbell wanted to remove him from his job as a chapel clerk. *Id.* Plaintiff asserts this was in retaliation for filing the grievance. *Id.* at 28.

On January 16, 2024, Defendant Rivers, an RJD correctional officer, came to Plaintiff's cell to conduct a "threat assessment." *Id.* at 29–30. Wilson questioned the purpose of the assessment and asked who ordered it, which did not "sit well with Defendant Rivers." *Id.* at 31. Not long after Rivers left, Plaintiff learned he was suspended from using his tablet for "free phone calls, messaging and video chat" for 60 days. *Id.* When Wilson complained, he was told it was because he allowed another inmate to use his tablet, an accusation which Wilson denied. *Id.* Plaintiff claims instead that Rivers "conspired" with "Global Tele Link" (the company that provides tablet communication services for inmates) to deprive him of his ability to make phone calls and send messages, in retaliation for Wilson's questions about the threat assessment. *Id.* at 31.

Finally, Wilson alleges that on March 11, 2024, Defendant "B" "intentionally" attempted to close Wilson's cell door before he had cleared it. *Id.* at 35. Wilson told the

---

[5] While not entirely clear, it does not appear that this volunteer was an RJD inmate.

*Armstrong* Ombudsman about the incident. *Id.* at 36. Sometime after March 23, 2024, "B" conspired with Defendants Castro and Morreo to retaliate against Wilson by "somehow remov[ing] [his] incontinence medial shower chrono" and no giving him adequate time to shower before breakfast. *Id.*

## C. Discussion

Plaintiff names eleven defendants: James Macomber, James Hill, Colnier, J. Salazar, Guckdrier, Amy Campbell, Randy, Rivers, Castro, Morreo, and Defendant "B." Doc. No. 1 at 16–18. Wilson alleges Defendants violated his rights under 42 U.S.C. § 1983 and asserts violations of the Eighth Amendment, the Due Process Clause, the First Amendment, the Equal Protection Clause. *See generally*, *id.* In conjunction with most of his § 1983 claims, Wilson also alleges Defendants conspired to violate his constitutional rights. *Id.* He also alleges violations of his rights under the ADA and RA. *Id.* He seeks money damages and an injunction ordering Defendants to provide him with a morning incontinence shower and to stop "harass[ing]" and retaliating against him. *Id.* at 37–38.

To state a claim under § 1983, a plaintiff must plausibly allege "both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

"Conspiracy is not itself a constitutional tort under § 1983," and it "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012); *Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1147 (N.D. Cal. 2015). Thus, to establish a conspiracy to violate one's rights under § 1983, a plaintiff must plead facts to plausibly show: "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *See Avalos v. Bacca*, 596 F.3d 583, 592 (9th Cir. 2010).

/ / /

### 1.    Official-Capacity Claims

Plaintiff sues CDCR Secretary Jeff Macomber and RJD Warden James Hill, in both their individual and official capacities.[6]  Doc. No. 1 at 27.  The Eleventh Amendment prohibits federal courts from hearing suits brought against a state by its own citizens, as well as by citizens of other states.  *See Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991).  This prohibition extends to suits against states and state agencies.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  A state's agency responsible for incarceration and correction of prisoners is a state agency for purposes of the Eleventh Amendment.  *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam).

Eleventh Amendment immunity extends to a state official sued in federal court in his official capacity and as such it bars suits for money damages against state actors in their official capacity.  *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  Thus, to the extent Plaintiff sues Macomber and/or Hill for money damages[7] in their official capacities, those claims are **DISMISSED**.

### 2.    Supervisory Liability

Wilson also alleges Macomber is individually liable under § 1983 based on his role as Secretary of the CDCR.  *See* Doc. No. 1 at 16.  "There is no respondeat superior liability under section 1983." *Taylor*, 880 F.2d at 1045.  "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the

---

[6] The remaining Defendants are sued in their individual capacities only.  *See* Doc. No. 1 at 37–38.

[7] A claim for prospective injunctive relief against a state official in his official capacity, however, is not barred by the Eleventh Amendment provided the official has authority to implement the requested relief. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 92 (1989).  Moreover, "[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation."  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citation and internal quotation marks omitted).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Iqbal*, 662 U.S. at 676. And here, there are no alleged facts regarding Macomber's involvement beyond his supervisory status. The Complaint only asserts liability based on Macomber's alleged responsibility for the overall operations of the CDCR. Thus, to the extent Wilson sues Macomber in his individual capacity, he has failed to state a § 1983 claim against him. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 676.

### 3. Eighth Amendment

Wilson contends his Eighth Amendment rights were violated in various ways. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments[.]" U.S. Const. amend. VIII. A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, *Farmer v. Brennan*, 511 U.S. 825, 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official acted, subjectively, with "deliberate indifference." *Id.* at 837 (citing *Wilson*, 501 U.S. at 297). "A prison official acts with 'deliberate indifference . . . only if [he or she] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004); *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the

inference.'" *Toguchi*, 391 F.3d at 1057 (quoting *Farmer*, 511 U.S. at 837). Neither negligence nor gross negligence is actionable under § 1983 in the prison context. *See Farmer*, 511 U.S. at 835–36, 836 n.4.

### a.    *Attempt to Close Door on Plaintiff*

Wilson alleges Defendant "B" violated his Eighth Amendment rights on March 21, 2024 when "B" "attempted" to close Wilson's cell door before he had fully cleared the entryway. Doc. No. 1 at 35. As discussed above, the Eighth Amendment requires a defendant act with conscious disregard of a "substantial risk" that Plaintiff would suffer serious injury as a result. *Farmer*, 511 U.S. at 834 (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)); *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009).

But here, Wilson fails to state a claim because he alleges nothing more than a close call in avoiding getting hit by the door. Doc. No. 1 at 35. An attempted violation of section 1983 is not actionable. *See Dooley v. Reiss*, 736 F.2d 1392, 1394–1395 (9th Cir. 1984) (finding no deprivation of a federal right under § 1983 because the defendants' attempt "ultimately failed"); *see also e.g.*, *Andree v. Ashland Cnty.*, 818 F.2d 1306, 1311 (7th Cir. 1987) (concluding a "mere attempt to deprive a person of his First Amendment rights is not, under usual circumstances, actionable under section 1983"); *Atchley v. Snow*, No. 11-cv-1516-JM-WMC, 2012 WL 1361793, at *7 (S.D. Cal. 2012) ("[T]he court notes that an attempt to violate constitutional rights is not generally actionable; there must be an actual violation of the right."). Therefore, Wilson has failed to state an Eighth Amendment claim against Defendant "B." *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678. The claim is therefore **DISMISSED** without prejudice.

### b.    *Access to Water*

Wilson alleges the Eighth Amendment was violated when (1) he was without a working faucet in his cell for eight days and (2) he has been without hot water in his cell for two years. Doc. No. 1 at 23.

/ / /

First, Plaintiff fails to identify any named defendant as responsible for these alleged deprivations. To a state a § 1983 claim, the plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676–77. This requires the presentation of factual allegations sufficient to state a plausible claim for relief as to each individual defendant. *Id*. at 678–79. And here, Wilson fails to allege any facts pointing to the conduct of any named Defendant which caused him to be without running water in his cell for eight days. His claim regarding the lack of hot running water in his cell suffers from the same deficiency. Therefore, he has failed to state a claim as to either. *Id.*

Furthermore, Plaintiff has not plausibly alleged that having a broken faucet in his cell for eight days amounted to a deprivation that was sufficiently serious to constitute a denial of the "minimal civilized measure of life's necessities." *See Farmer*, 511 U.S. at 834. Wilson acknowledges during that 8-day period his cell faucet was not working, he was provided with bottled water in the mornings and evenings. Doc. No. 1 at 23. And he has not alleged the amount of bottled water provided was insufficient to meet his needs, nor has he alleged he was without access to sufficient drinking water during the day from sources outside his cell. *See e.g.*, *Presti v. Telefoni*, No. 21-cv-00405-LEK-WRP, 2022 WL 44832, at *7 (D. Haw. 2022) (finding inmate failed to allege serious deprivation sufficient to support Eighth Amendment claim based on lack of running water in cell when he was provided with bottled water); *Corona v. Foltz-Orbal*, No. 4:24-cv-3024-JFB, 2024 WL 4040864, at *5 (D. Neb. 2024) (finding inmate's claim that he could not access drinking water through prison's plumbing system insufficient to rise to the level of a constitutional violation when he was provided with bottled water as an alternative).

Likewise, the mere lack of running hot water inside an inmate's cell is insufficient to constitute a sufficiently serious deprivation under the Eighth Amendment. Wilson makes no allegation that he lacked access to hot water from other sources within his housing unit, such as showers and/or other faucets in the showering area or common areas and thus he has failed to state a plausible claim. *See Toguchi*, 391 F.3d at 1057; *see*

*also e.g.*, *Muslim v. D'Ilio*, 2018 WL 4522048, at *8 (D. N.J. 2018) (finding no Eighth Amendment violation when inmate's cell was without hot water, but he was able to access hot water from other sources). Therefore, even if Plaintiff had identified an individual defendant, as currently pleaded the Complaint fails to plausibly allege an Eighth Amendment violation. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678. Accordingly, the claim is **DISMISSED** without prejudice.

### c. *Incontinence Shower*

Wilson alleges that his Eighth Amendment rights were violated when Salazar delayed his incontinence shower for four-and-a-half hours on February 9, 2023. Doc. No. 1 at 23. Plaintiff also appears to allege Defendant "B" delayed his incontinence shower for "30 minutes or so" on March 11, 2024. *Id.* at 35.

Inmates have the right to adequate sanitation and hygiene. *See Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (amended by 135 F.3d 1318 (9th Cir. 1998)); *Anderson v. County of Kern*, 45 F.3d 1310, 1314–15 (9th Cir. 1995). Here, however, Wilson has not plausibly alleged that a 4.5-hour (much less 30-minute) delay in showering, even after an episode of urinary incontinence, is sufficiently "serious such that it result[ed] in a denial of the minimal civilized measure of life's necessities." *See Anderson*, 45 F.3d at 1314–15 (9th Cir. 1995) (noting temporary unconstitutional conditions of confinement do not rise to the level of constitutional violations). While being unable to shower immediately after a bout of incontinence may be uncomfortable or embarrassing, Wilson alleges no facts which suggest such short delays amounted to a substantial risk of harm to him. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (stating courts must consider "the circumstances, nature, and duration of the deprivation" in determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim).

/ / /

/ / /

/ / /

Second, even assuming such a risk existed, Wilson has failed to allege facts to show that Salazar or "B" were subjectively aware of it.[8]  *See Farmer*, 511 U.S. at 834; *see also Bartholomew v. Sisto*, 2013 WL 4482837, at *4 (E.D. Cal. 2013) (finding no constitutional violation when inmate alleged he was denied a shower for a day after he urinated in his clothes).  Therefore, Wilson has failed to state an Eighth Amendment claim against Salazar and "B" for delaying his morning incontinence showers.  *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.  As such, the claim is **DISMISSED** without prejudice.

### d.    *Conspiracy to Violate Eighth Amendment*

Wilson alleges Salazar conspired with Guckdrier to violate his Eighth Amendment rights by delaying his incontinence shower on February 9, 2023.  Doc. No. 1 at 22–23.  He also claims that sometime after March 23, 2024, Defendant "B" conspired with Morreo and Castro to deny him incontinence showers.  *Id.* at 36.  To state a claim based on a purported conspiracy to violate the Eighth Amendment, Wilson must point to "specific facts to support the existence of the claimed conspiracy" including "an express or implied agreement" or a "meeting of the minds" among the defendants to deprive him of a constitutional right.  *See Avalos*, 596 F.3d at 592; *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989).  Conclusory allegations of conspiracy are not sufficient. *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989).

Here, Wilson fails to state an Eighth Amendment conspiracy claim against Salazar and Guckdrier.  First, Wilson states only that Salazar "told" Guckdrier not to let Wilson shower until "morning programs began" at 10:30 a.m. on February 9, 2023.  Doc. No. 1 at 22.  This is insufficient to plausibly allege there was a "meeting of the minds" between the two to violate Wilson's Eighth Amendment rights.  Moreover, as discussed above, a

/ / /

---

[8] Wilson states it was his routine to change clothing in the morning.  Doc. No. 1 at 22.

30-minute or 4.5-hour delay in showering does not amount to a sufficiently serious deprivation to support an Eight Amendment violation.

As for Defendant "B," Morreo and Castro, Wilson alleges that the three "conspired" to alter his "medical chrono" to deny him an incontinence shower. *Id.* at 36. Yet he alleges no specific facts to support such an inference. Wilson's conclusory allegations are insufficient to state a claim. *Burns*, 883 F.2d at 821. Furthermore, Wilson fails to allege any other instances where he was denied a shower. He states only that he has does not have sufficient time to take the shower before breakfast. Doc. No. 1 at 36. As such the Complaint does not plausibly allege a deprivation of Wilson's Eighth Amendment rights and as such he fails to state a conspiracy claim. *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (stating a conspiracy claim requires "an actual deprivation of constitutional rights."); *Woodrum*, 866 F.2d at 1126–27 (9th Cir. 1989) (explaining that § 1983 applies only to conspiracy claims that result in a deprivation of constitutional rights).

In sum, Plaintiff has failed to state a claim that Defendants Salazar, Guckdrier, "B," Morreo, and/or Clark conspired to violate his Eighth Amendment rights. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Burns*, 883 F.2d at 821. The claim is therefore **DISMISSED** without prejudice.

### 4.    Due Process: Denial of Transfer

Wilson alleges he was transferred to RJD from LAC for court proceedings and Defendants Hill and Colnier violated his right to due process when they failed to transfer him back to LAC at the conclusion of those proceedings. Doc. No. 1 at 19–21. The Supreme Court has specifically held that decisions regarding prison transfers do not implicate a liberty interest, and thus does not implicate the Due Process clause. *See Meachum v. Fano*, 427 U.S. 215, 224–25 (1976) ("Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system."); *see also Olim v. Wakinekona*, 461 U.S. 238 (1983). Nor does the fact that Plaintiff was transferred to a different prison

away from his family implicate any constitutional interest. *See Anderson v. Deleon*, No. 12-cv-6055-SI-PR, 2013 WL 892276, at *5 (N.D. Cal. 2013) ("Loss of a prison job, assigning an inmate to a prison far from his family and friends, and the like, which result from interprison transfers, are not constitutionally protected interests.") (citing *Olim*, 461 U.S. at 247). Therefore, Wilson has failed to state a due process claim and as such it is **DISMISSED** without prejudice. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### 5. First Amendment and Conspiracy: Access to Communication Tablet

Wilson alleges Defendant Rivers violated his First Amendment rights by suspending his use of his tablet for communicating with individuals outside the prison. Doc. No. 1 at 30–31. Specifically, he states that he uses a tablet provided by "Global Tel Link" to call or correspond with family and friends outside of the prison. *Id.* He states that from January 16, 2024 to March 16, 2024, he was suspended from using his for "free phone calls, messages, [and] video chat" features on his tablet. *Id.* at 31.

Generally, prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). However, a "delicate balance" must be stricken between a prisoner's First Amendment rights and the discretion given to prison administrators to govern the order and security of the prison. *Thornburgh*, 490 U.S. at 407–08.

Here, however, Wilson has not alleged he was denied the ability to send or receive mail. Instead, he states he should have been provided with free envelops to use for correspondence while his tablet privileges were suspended. Doc. No. 1 at 30. While courts have held indigent inmates should be provided with items necessary to correspond with courts and pursue legal claims, Wilson does not allege he was prevented from accessing the courts. *See Gluth v. Kangas*, 951 F.2d 1504, 1510 (9th Cir. 1991) (finding district court did not err in ordering an indigent state prisoner be provided a minimum number of envelopes because "envelopes are necessary to send documents to the court").

/ / /

Therefore, Wilson has failed to state a First Amendment claim based on the temporary suspension of his tablet privileges.

Wilson also alleges Rivers "conspired" with Global Tel Link,[9] the entity that contracts with CDCR to provide the tablets, to infringe on his First Amendment rights. As discussed above, to state a claim for a conspiracy to violate one's constitutional rights under § 1983, the plaintiff must allege specific facts to show "an agreement or meeting of the minds to violate constitutional rights." *Crowe*, 608 F.3d at 440. Furthermore, the plaintiff must show an actual deprivation of those constitutional rights. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010). Here, Wilson alleges no facts to show an agreement or "meeting of the minds" between Rivers and Global Tel Link. He also fails to allege an actual deprivation of his First Amendment rights. Therefore, he has failed to state a First Amendment conspiracy claim against Rivers. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Burns*, 883 F.2d at 821. The claim is **DISMISSED** without prejudice.

## 6.    <u>First Amendment Retaliation</u>

Plaintiff raises several claims of First Amendment retaliation in his Complaint. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

/ / /

/ / /

/ / /

---

[9] Wilson does not name Global Tel Link as a defendant and does not allege state action on its part. However, "[e]stablishing liability for a conspiracy between a private actor and a state actor is no different from establishing liability for a conspiracy between two state actors." *Crowe*, 608 F.3d at 440.

### a. Warden Hill

Wilson contends Hill refused to transfer him back to LAC in retaliation for his "refus[al] to accept a[n] offer of a settlement," and instead to trial, in another civil action. Doc. No. 1 at 20.

A prisoner's pursuit of "civil rights litigation in the courts" is protected conduct under the First Amendment. *Rhodes*, 408 F.3d at 567. But to state a retaliation claim, Wilson must also allege a causal connection between this protected conduct and the alleged adverse action, in this case the failure to transfer Wilson back to LAC. *See id.* Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *Watison*, 668 F.3d at 1114 (citing *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (stating "timing can properly be considered as circumstantial evidence of retaliatory intent"). Wilson has failed to do so here. There is no allegation that Hill knew of Wilson's "refusal to settle" in a civil case at the time his transfer was being considered. And even assuming Hill was aware, it is not clear when the settlement was rejected and/or when Hill became aware of it sufficient to infer retaliatory intent. *See id.*

Finally, the Court notes that Wilson concedes his transfer was denied after a review by the Unit Classification Committee. Doc. No. 1 at 19. As such Wilson has failed to plausibly allege Hill was the individual who took the "adverse action." *Watison*, 668 F.3d at 1114. And to the extent Wilson's claim is based on a theory of supervisor liability and Hill's position as RJD's Warden, this is not a proper basis for the claim because, as discussed above, there is no respondeat superior liability under § 1983. *Taylor*, 880 F.2d at 1045. Therefore, Wilson has failed to state a First Amendment retaliation claim against Hill.

### b. Guckdrier

Plaintiff claims that on August 3, 2023, Guckdrier attempted to look into his cell while he was "naked," in retaliation for Wilson's July 13, 2023 participation in an "interview[] by [an] ADA *Armstrong* Court Compliance Sergeant." Doc. No. 1 at 25.

Wilson states that on August 3, 2023, he had placed a "privacy covering" over his cell window so he could clean up after a bout of incontinence. At about the same time, Guckdrier was conducting his routine security check. *Id.* When Guckdrier passed Wilson's cell he told Wilson to remove the covering or he would issue him a rule violation report. *Id.* at 24–25.

Plaintiff has failed to state a retaliation claim. First, he has failed to allege facts showing that Guckdrier was aware of the July 13, 2023 interview and as such as not plausibly alleged the action was taken *because* of Plaintiff's protected conduct. *See Rhodes*, 408 F.3d at 567; *Pratt*, 5 F.3d at 808 (concluding that suspicious timing of an adverse action was insufficient to establish causation because there was nothing to indicate the defendant was "actually aware" of the prisoner's protected conduct). Furthermore, Wilson concedes Guckdrier was conducting a security check and thus has failed to allege Guckdrier lacked a legitimate penological purpose for ordering Wilson to remove the covering and allow a view into his cell. *See Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) (noting that to state a retaliation claim, a plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution"). Therefore, Wilson has failed to state a retaliation claim against Guckdrier.

### c. *Campbell and Randy*

Plaintiff also alleges Campbell and Randy retaliated against him. In early 2024, Campbell was a chaplain at RJD, Randy was a chapel volunteer[10] and Wilson had a

---

[10] Plaintiff identifies Defendant Randy as an RJD "volunteer for Protestant services." Doc. No. 1 at 17. Private parties may only be held liable for alleged violations of rights under the United States Constitution under 42 U.S.C. § 1983 when "the party charged with the deprivation [of a federal right is] a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). This requirement is difficult to satisfy if the defendant is a private citizen, for "[o]nly in rare circumstances can a private party be viewed as a 'state actor' for section § 1983 purposes." *Rayburn v. Hogue*, 241 F.3d 1341, 1347

position as an inmate "chapel clerk." Doc. No. 1 at 26. Wilson alleges that on January 3, 2024, Campbell asked him if he had gotten his "new inmate assignment." *Id.* Plaintiff responded he had not and asked Campbell "who is trying to change [his] job position." Campbell replied, "I am" and explained that she thought Plaintiff was "not getting along with the volunteers." *Id.* Wilson stated the only volunteer he had a problem with was the "Mexican one" who was also an "ex-convicted felon" (in reference to Randy). *Id.* at 26–27.

At some point, Randy had directed Wilson to "mop the floors and clean [the chapel area] up" and stated he would write Wilson up if he failed to do so. Wilson filed a grievance about the matter because his disability prevents him from performing such tasks and Randy was not his supervisor and thus could not order him to perform such tasks. *Id.* at 27.

First, Wilson fails to specify when the incident with Randy took place and when he filed the grievance which purportedly led to the retaliation. As such has failed to plausibly allege causation. *See Watison*, 668 F.3d at 1114. Furthermore, even assuming Wilson's grievance regarding Randy was submitted shortly before Wilson's January 3, 2024 and that Campbell was aware of it, Plaintiff has not plausibly alleged "adverse action" was taken as a result. *Id.* Wilson does not allege he was actually removed from his position as chapel clerk by Campbell (or anyone else). Nor does he allege Campbell "threatened" to remove him from the job. And lastly, he alleges no "adverse action" taken by Randy. Therefore, he has failed to state a retaliation claim against Campbell and/or Randy.

### d.   Rivers

Wilson also claims Rivers retaliated against him. He alleges that on January 16, 2024, Rivers was conducting a "random threat assessment." Plaintiff asked Rivers "what

---

(11th Cir. 2001). Here, the Court need not determine whether Randy was a state actor for § 1983 purposes because, even assuming he was, Wilson has failed to state a claim.

1  group of inmates . . . had made the alleged threat" and "who ordered [the assessment]."

2  Doc. No. at 31.  Plaintiff "guess[]es these questions did not sit well with Rivers" because

3  shortly thereafter, Rivers "went to the employees on watch for Global Tel Link and asked

4  them "retaliate against" him for not complying with an order.  *Id.*  Later that same

5  evening, the applications on Wilson's tablet which allowed him to make phone calls and

6  send messages were disabled.[11]

7      Wilson fails to state a retaliation claim because he fails to allege his comments to

8  Rivers about the purpose of the threat assessment constituted "protected conduct."  *See*

9  *Johnson v. Carroll*, 2012 WL 2069561, at *34 (E.D. Cal. June 7, 2012) (finding

10  statements that were merely argumentative, confrontational, and disrespectful insufficient

11  to constitute protected conduct); *Young v. Moreno*, 2012 WL 1836088, *4 (C.D. Cal.

12  2012) (concluding prisoner's verbal confrontation with correctional officer, which

13  included plaintiff's statement that the officer was "stupid to write such bullshit RVR's,"

14  not protected speech); *Nunez v. Ramirez*, No. 09-cv-0413-WQH-BLM, 2010 WL

15  1222058, at *4 (S.D. Cal. 2010) (finding inmate's challenging remarks directed toward

16  officer were not protected speech for purposes of a retaliation claim).  Therefore, Wilson

17  has failed to state a First Amendment retaliation claim against Rivers.

18              ***e.    Conclusion***

19      Based on the above, Plaintiff has failed to state a First Amendment retaliation

20  claim against any Defendant. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Rhodes*,

21  408 F.3d at 567–68.  The claims are therefore **DISMISSED** without prejudice.

22      **7.    Equal Protection**

23      Wilson alleges Campbell violated his right to equal protection when she sought to

24  have him assigned to another job position.  He also appears to allege an equal protection

25

26

27  [11] Wilson's tablet's communication applications were disabled from January 16, 2024 to March 16, 2024.

28  Rivers told Wilson this was because he had improperly allowed another inmate to use his tablet; but
Wilson alleges this was a "fabrication."  Doc. No. 1 at 31.

claim against Randy for directing Wilson to perform tasks that his disability made difficult.  Doc. No. 1 at 29.  The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection against the laws," which essentially requires all persons similarly situated to be treated alike.  U.S. Const. amend. XIV; *see City of Cleburne, Tex. v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To state a claim under the Equal Protection Clause, Plaintiff must allege facts sufficient to support a claim that prison officials intentionally discriminated against him based on his membership in a protected class. *Hartmann v. Cal. Dep't of Corr. & Rehab*., 707 F.3d 1114, 1123 (9th Cir. 2013).  The United States Supreme Court has recognized that equal protection claims may be brought by a "'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Generally, legislation is presumed to be valid and will be sustained if it is rationally related to a legitimate state interest.  *City of Cleburne*, 473 U.S. at 440.

Wilson has failed to state a plausible equal protection claim.  "[T]he disabled do not constitute a suspect class for equal protection purposes." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001).  Moreover, Plaintiff fails to allege he was intentionally singled out for disparate treatment by Campbell or Randy *because* he is disabled.  *See id*. (citing *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) ("*Feeney*")). "'Discriminatory purpose'. . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Feeney*, 442 U.S. at 279 (internal citation omitted).  Wilson makes only conclusory allegations which are insufficient to support his equal protection claims against Campbell and Randy.  *See Iqbal*, 556 U.S. at 678; *see also Dews v. Cty. of Kern*, 599 F. App'x 681, 682 (9th Cir. 2015) (finding that district court properly dismissed plaintiff's equal-protection claim because he "failed to allege facts sufficient to

show that he was a member of a protected class or that he was intentionally treated differently from other similarly situated individuals for an irrational reason"); *Williams v. Doe*, 343 F. App'x 196, 197 (9th Cir. 2009) (dismissing "[v]ague and conclusory" § 1983 equal-protection allegations for failure to state claim). Therefore, the Court **DISMISSES** Wilson's equal protection claim without prejudice for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

## 8. Americans with Disabilities Act and Rehabilitation Act

Finally, Wilson alleges Defendants "B," Morreo, Castro, Hill and Macomber violated his rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") by depriving him of early-morning incontinence showers. Doc. No. 1 at 36–37. To state a claim under Title II of the ADA, a plaintiff must allege: "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007).

To state a claim under Section 504 of RA, a plaintiff must allege he or she was: (1) an individual with a disability; (2) otherwise qualified to receive the benefit; (3) denied the benefits of the program solely by reason of his or her disability; and (4) the program receives federal financial assistance. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Because of the similarities between the laws and remedies available, a complaint that properly states a claim under Title II of the ADA also states a claim under Section 504 of the RA. *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

First, Wilson's claim fails because he has not named proper defendants. The proper defendant for a claim under Title II of the ADA and § 504 of the RA is the public entity responsible for the alleged discrimination. *See Everson v. Leis*, 556 F.3d 484, 501

22

n.7 (6th Cir. 2009) (collecting cases); *Peace v. 850 Bryant St*., 2019 WL 5423473, at *3 (N.D. Cal. 2019); *see also Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (stating "plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act."). State correctional facilities are generally deemed "public entities" under the ADA and RA. *See* 42 U.S.C. § 12131(1)(A) & (B); *Pa. Dep't. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997). Thus, Wilson has failed to state a claim under the ADA and/or RA against individual Defendants "B," Morreo, Castro, Hill and Macomber.

Furthermore, even assuming Wilson had named a proper defendant, the Complaint would still fail to state a claim because it is devoid of facts showing that Wilson was delayed or denied a morning incontinence shower "by reason of his disability." *See Guinn*, 502 F.3d at 1060. Wilson alleges that some time after March 23, 2024, "B," Morreo and Castro began delaying or denying his morning incontinence shower, with the purported acquiescence of Hill and Macomber. Doc. No. 1 at 36–37. However, while Wilson alleges a qualifying disability, he does not allege any facts to support this claim that Defendants failed to accommodate him *because* of his disability. Instead, he relies on conclusory statements unsupported by specific facts in the Complaint. *See, e.g.*, *Dean v. Sisolak*, 2022 WL 2763389, at *5 (D. Nev. 2022) (finding plaintiff's assertion that his rights under the ADA and RA were violated when various defendants "discriminated against [him] by reason of his disability" conclusory); *Regal v. Cnty. of Santa Clara*, 2023 WL 2266135, at *7 (N.D. Cal. 2023) (dismissing ADA and RA claims because the plaintiff failed to allege facts to show services were denied because of his disability).

Therefore, the Court **DISMISSES** Plaintiff's ADA and RA claims without prejudice for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

/ / /

/ / /

### 9. **Leave to Amend**

In light of Plaintiff's *pro se* status the Court **GRANTS** him leave to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## IV. CONCLUSION AND ORDER

For the above reasons, the Court:

(1)    **GRANTS** Plaintiff's Motion to Proceed IFP (Doc. No. 2).

(2)    **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $3.22 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST CLEARLY IDENTIFY THE NAME AND CASE NUMBER ASSIGNED TO THIS ACTION.

(3)    **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, by U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

(4)    **DISMISSES** the Complaint in its entirety for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

(5)    **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an amended complaint which cures the deficiencies of pleading noted above. The amended complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his amended complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended

pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an amended complaint within the time provided, the Court will enter a final Order dismissing this civil action for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: October 31, 2024

HON. MICHAEL M. ANELLO
United States District Judge