1  Herald Wilson #B-93800
2  Richard J Donovan Correctional Facility
3  Facility C-12-138L
4  480 Alta Road
5  San Diego, Ca 92179
6
7  In Pro Per

FILED

FEB 26 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

9           United States District Court
10         Southern District of California
11
12
13  Herald Wilson              Case No. 24-cv-1079-MMA-(AHG)
14    ("CDCR") #B-93800
15       Plaintiff                    Plaintiff's First
16                                  Amended Complaint"
17  V.
18
19  Secretary Jeff Macomber et.
20       Defendants
21
22         1.    Introduction
23
24  Plaintiff is a Incarcerated Person proceeding on
25  the Civil Rights Action pursuant to 42 U.S.C. Section 1983
26  against the entitle named Defendants for the cause of
27  Action under Section 5 of the Fourteenth Amendment via
28  Title 11 of the American with Disabilities Act ("ADA") no

1.

qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity, or be subject to discrimination by any such entity, 42 U.S.C. Section 12132, Section 504 of the Rehabilitation Act, which entity receiving Federal financial assistance ... 29 U.S.C. Section 794.794(c).

As California Department of Corrections and Rehabilitation does for all their State Prison. All defendants are being sue under the Color of State law. Section 42 U.S.C. Section 1985(3) and 1886. for unnecessary and wanton infliction of pain, with sufficiently culpable state of mind subjectively aware substantial risk of serious harm to Plaintiff future health.

First Amended Complaint, Civil Rights Action pursuant to 42 U.S.C. Sections 1983, 1985(3), 1986 Civil Conspiracy First Amendment, Due Process Clause of the Fourteenth Amendment prohibit States from depriving any person of life, liberty, or property, and Equal Protection of the law or engage in the retaliation for redress of grievance against Government Officials. Deliberate Indifference to Plaintiff's serious medical needs by refusing Plaintiff reasonable accommodations for their Rams by the toilet, and incontinent showers or DME's for Plaintiff's physical impairments walking, standing or balance. Staff Sexual Misconduct DOM Section 54040. Policy Section 12133, for the remedies, procedures, and rights set forth in Section 505 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794(a), Section 202  42 U.S.C. Section 12132, basis of Discrimination violations. American with Disabilities Act, Section 5 of the Fourteenth Amendment Rights, invoke

as to Title II of the American With Disabilities Act,
104 Stat. 337, 42 U.S.C. Section 12135-65, which abrogate
State Sovereign immunity under the Eleventh
Amendment Federal Constitution Title 42 U.S.C. Section
12101-12213, Via Rehabilitation Act, because a State
program or activity that accepts Federal funds waives
its Eleventh Amendment immunity. Defendants violated
the Eighth Amendment cruel and unusual punishment,
prohibits the government from exacting treatment of a
prisoner in the conditions which he or she is confined, before
a court subject the prison condition to scrutiny, because
prison officials "must provide humane conditions of
confinement... and must take reasonable measures to
guarantee the safety of the inmates.

2.    Defendants continue victimization of plaintiff
for no other reason but the Plaintiffs willingness to exercise Plaintiff
Constitutional Rights as a citizen of the United States to Freedom
of Speech and Freedom of Association, to redress grievence
of government official, but State actors under the color of
State law who are apart of a unlawful organize enterprise
corrupt gang under the gist of Correction Officers should give
this court pose as to the rascal classification that is under
the embryonic as the new "Green Wall," here at (R.T.D).

        There has been at lest five (5) final settlements decreed
for the physical disable, and Mental disable, but the abuse
has gotten worse because its not the subordinate that is rejecting
decree of the Courts, but the Captain of the ship who is enable
the subordinate to turn off the body Cam or to destroy evidence.

1. Plaintiff was and is still being denied morning meals
2. and lunch for 18 months now, that has endanger Plaintiff's
3. health at the age of 64-years old will be 65-year old on
4. April 26, 2025 following. Plaintiff weight was between
5. 180 to 175. Plaintiff weight today is 154, that is the lost of
6. about 30 to 25 pounds. "Plaintiff was given a alternative to
7. either wash the urine off Plaintiff by taking a incontinent
8. shower at the time in the morning when the housing unit is
9. release for morning meal or go to the chow hall and eat the
10. morning meal and received a lunch as Plaintiff walks out of
11. the chow hall like all other inmates due or smell like urine
12. until Plaintiff returns from the chow and than received a
13. incontinent shower." But all other incontinents got their shower
14. if they need it at 6:00 a.m. after the staff walk their morning
15. security check. Because the morning meal release is either at
16. 6:30 or 6:45 a.m., and the morning meal for Building (12) where
17. Plaintiff is housed is over 10 to 15 minutes later. Thereby by the
18. time Plaintiff is done taking the incontinent shower getting all
19. the smell of urine off Plaintiff the building morning meal is
20. over. Plaintiff has not had hot water in Plaintiff cell from 2022-
21. 2024 of August. And was force to go without any water for 8 days,
22. but for retaliation by defendants which for the 8-days Plaintiff
23. received one 16-ounce bottle of water in the morning at 6:00
24. a.m. to wash up brush Plaintiff's teeth, to take Plaintiff's every
25. on medication, to drink. Thereafter, Plaintiff received one more
26. 16-ounce bottle of water at 2:00 p.m. on third watch to last
27. Plaintiff until 6:00 a.m. the next morning. This retaliatory
28. act continue for 8 days. Plaintiff next retaliatory acts

continue by the defendants. Plaintiff has been removed
from Job Assignment with pay numbers two time without
due process to show cause why. At this . present moment
Plaintiff is being denied the right to participate in
the "Work Incentive Program" in retaliation for Plaintiff
Filing Objections to the Settlement Agreement in case
No. 34-2022-0032869-CV-00-GDS against ("CDCR"), for
unauthorized access of ("CDCR") Platforms A Confidential
Medical Information. Plaintiff filed to train lawyers, both the
Ombudsman "Scott Jacobs who came to interview Plaintiff
and will be a witness for Plaintiff, and Plaintiff will called
Federal Officers of this Court to testify to the truth of
the subject matter.

### 3. Jurisdiction And Venue

This Civil complaint for damages arise from alleged violations of 42 U.S.C.
1983 42 U.S.C. 1985(3) and 42 U.S.C. 1986. This District pursuant 28
U.S.C. 1331 . Claims within such original Jurisdiction form
the same case or controversy under Article III of the
United States Constitution. Venue is proper pursuant to
42 U.S.C. Section 1983, Section 1985(3), and 1986

### 4. Deprivation Of Rights
### 42 U.S.C. Section 1983

Every person who, under color of State, ordinance,
Regulation, Custom, or usage, of any State or Territory or

District of Columbia, subjects, or cause to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of the District of Columbia shall be considered to be a statute of the District of Columbia.

## 5. Cause of Action
### Civil Conspiracy Elements

Independent cause of action for Civil Conspiracy is recognized in this State, a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendant with an actionable, underlying tort and establish that those actions were part of a common scheme.

## 6. Parties

7. Plaintiff Donald Wilson, is a State Prisoner incarcerated

6.

at Richard J. Donovan Correctional Facility, at all times mention herein. Plaintiff is proceeding on this Civil Action without Counsel.

8. Plaintiff knows and believe, and thereon allege that Defendant is "Secretary Jeff Macomber" of California Department of Corrections and Rehabilitation, and is responsible for the health and safety of all Incarcerated Persons in the state of California.

9. Plaintiff knows and believe, and thereon allege that Defendant "Jame Hill," is the Warden or Custodian, controls, manages, operates and is otherwise responsible for the safety and health of all Incarcerated Persons housed at Richard J. Donovan Correctional Facility.

10. Plaintiff knows and believe, and thereon allege that Defendant "M. Colvice," is the Program Administrator for Facility "C" and Over see the Institutional Classification Committee for the Transfers of Incarcerated Person on Facility "C" In and to-Court Temporary Placement at Richard J. Donovan Correctional Facility, and Facility "C."

11. Plaintiff knows and believe, and thereon allege that Defendant "Julian Salazar," is a Correctional Officer with the Rank of Sergeant for Facility "C" at the times mention and is responsible for the health and safety of all Incarcerated Persons on Facility "C."

12. Plaintiff knowns and believe and thereon allege that "Defendant Rhoaden," is a Correctional Officer assigned to Facility "C" at times allege herein, and is responsible for all Incarcerated Person housed in Building Eleven for their health and Safety.

13. Plaintiff knowns and believe and thereon allege that Defendant "Casdoe," is a Correctional Officer assigned to Facility "C" at times allege herein, and is responsible for all Incarcerated Person housed in Building Eleven for their health and Safety.

14. Plaintiff knowns and believe and thereon allege that Defendant "Amy Campbell," is Responsible for all Incarcerated Person on Facility "C" as the assigned Chaplain, and is Responsible for their health and safety.

15. Plaintiff knowns and believe and thereon allege that Defendant "Randy," is approved Volunteer assistance to Defendant Amy Campbell, and Defendant Randy, is a allege gang member of the Mexican Southsiders via the Mexican structure and convicted felony.

16. Plaintiff knowns and believe and thereon allege that Defendant "Rivers," is Correctional Officer assigned as a S.E. on Facility and work part time on second and third watch and is responsible for the health and Safety of all Incarcerated Persons on Facility "C."

17. Plaintiff knowns and believe and thereon allege that Defendant Warnes is a Correctional Officer and is responsible for the safety and health of all Incarcerated persons on Facility "E" and housed in Building Eleven.

18. Plaintiff knowns and believe and thereon allege that Defendant "Balladene" is a Correctional Officer on Facility "E" and is responsible for the health and safety of all Incarcerated persons on and in Facility Building Eleven as Control Booth Officer on Second Watch

19. Plaintiff knowns and believe and thereon allege that Defendant "Captain Alexander" is a Correctional Officer on Facility "E" and is responsible for the health and safety of all Incarcerated persons on Facility "E"

20. Plaintiff knowns and believe and thereon allege that Defendant "C. Bracamonty, ASR Coordinator for the Reasonable Accommodation Panel and is responsible for all Qualified Individual with Disability to Accommodated the benefit of programs, activities, service, by the Rehabilitation Act (504) on Facility "E"

21. Plaintiff knowns and believe and thereon allege that Defendant "GTL" is a Public Entity with the Contract to give to give Access to all Incarcerated persons on Facility to Access the Court and correspond with Family or Friend with out-Cost for Indigent Incarcerated persons.

22. Plaintiff knowns and believe and thereon allege that Defendant Torres is a LVN and is Responsible for the health and Safety of all Incarcerated Persons at Richard J. Donovan Correctional Facility."

23. Plaintiff has many Serious Medical Conditions Including Physical Mobility And Incontinence Under Title II of The American With Disabilities Act (ADA) 42 U.S.C. Section 12131-12132 and Section 504 of The Rehabilitation Act 29 U.S.C Section 794-794(a).

24. On June 20, 2022, Plaintiff was transfer to Richard J. Donovan Correctional Facility Temporary for Out-to-Court proceeding for trial of a Civil Action against a State actor under the Color of State law.

25. Thereafter, trial was completed on July 14, 2022, or there about Plaintiff was order by the United State Southern District Judge to be Returned by Department of Correction back to Plaintiffs original sending institution Los Angeles County State Prison Lancaster (LAC). For Reasons unknown as of this date Plaintiff has not been transfer back to (LAC), and has been force to Remain here at (RJD).

26. Thereafter, Plaintiff filed a 602 appeal against (RJD)

administrative officials for theirs, refusal to transfer Plaintiff back to (LAC) Title 15 Section 3375-Classification Process. On January 4, 2023, the Office of Appeals Granted Plaintiff grievance to be transfer back to (LAC).

27. Plaintiff sent the Custodian, Warden Defendant "James Hill," actual Notice" of the fact Plaintiff is being held at His institution as Temporary Placement the out-to-court proceeding was completed. Plaintiff received a under handed threather letter as above of Appeal process.

28. Thereafter, Plaintiff sent a "actual Notice" to the Secretary "Jeff Macomber," concerning the Misconduct by His employees concerning their unwillingness to comply with a granted grant for transfer back to Plaintiff's sending institution after court proceedings where over. Plaintiff received another off hand threat about abuse of appeal process.

29. Due to the retaliatory acts by those officials Plaintiff was denied the rights under the Fourteenth Amendment of the U.S. Constitution of Equal Protection of law to be treated as other similarly situated Prisons. Plaintiff was granted a Hardship transfer to a Prison closer to Plaintiff's older brother John who was suffering from lose of his memory and (LAC) was the closest Prison to Altadena California. Due to his age and health and the travel was not to long for him due to his health. Plaintiff filed a grievance against the issue a second time, and received a rule violation in retaliation

11.

for not accepting a school assignment which Plaintiff was not require to be in roll in, in retaliation for filing a grievance against the two Defendants Sanders v. Hobbs, 773 F.3d 186, 190 8th Cir 2014.

30. Plaintiff was discriminated against. Due to Plaintiff disabilities to walk with Plaintiff ANK or mop the Chapel floor. On 8-16-2023, Plaintiff was assigned as chapel Clerk/Center. On 9-2-2023, Defendant Randy, a volunteer was in the chapel when Plaintiff reported to work. As Plaintiff approach Plaintiff Chapel Clerk Office and ask the Defendant has anyone beside the Defendant been inside the Clerk Office because the desk in the office and Plaintiff is responsible for everything in the office.

31. Defendant stated yes the religious (leadership) other inmates not staff. Plaintiff explain to the Defendant Randy, that no one except Plaintiff or staff is allowed in the Clerk Office as the sign states on the door, because if anything comes up missing Plaintiff will be blame for it.

32. Defendant did not take kind to that statement, and said He had been volunteer for a long time and he (Defendant) could let anyone Defendant want into the Clerk Office. Plaintiff went ask a Office to explain to Defendant that Plaintiff was correct.

34. Thereafter Defendant Randy, very upset and told Plaintiff that he wanted Plaintiff hard first thing in the morning and to mop the floors. Plaintiff told Defendant that Plaintiff has physical disabilities and need Plaintiff ANK: Walker with a

12.

seat to get around, Defendant stated "you are one of those people." On 11-12-2023, Plaintiff reported to work in the Facility "E" Chapel, and the same volunteer Defendant Rendy. Was there, and he told Plaintiff he was given the authorities to remove Plaintiff from being the Clerk because Plaintiff cannot do the job assignment without Plaintiff's DME." On the same date Plaintiff filed a grievance for discrimination and a Misconduct investigation was initiated.

35. Plaintiff was not taken before a Classification Committee as require before removing a Incarcerated Person from a work assignment which is a pay position without cause to do so. Plaintiff appeal to Defendant Amy Campbell, Plaintiff Supervisor who in return replace with a white Clerk. Come to discover Plaintiff was the first Black Chapel Clerk to ever be assigned to that position,

36. Plaintiff, a grievance cycle on 12-21-2023, to Defendant M. Colnice, and Defendant James Hill, Defendant Captain Alexander, no action was taken on Plaintiff's behalf. Plaintiff also filed CDC-1824 to Reasonable Accommodation Grant to Defendant G. Bracamonte, ADA Coordinator, Who refuse to Accommodate Plaintiff from being discriminated against

37. Thereafter, Plaintiff was assigned a lower pay position as a ADA Worker SEMI-skilled. Plaintiff filed a grievance for not being allowed to report to work against Defendant Castro on 7-4-2021 and against Defendant Moreno, Who was Plaintiff's Floor Officer's

in Building Eleven and Plaintiff filed a CDC-1824 to the Reasonable Accommodation Panel, and Defendant C. Bracamonte, ADA Coordinate on the same date and was interviewed on 7-8-2024, and no accommodation was provided by Defendant "C. Bracamonte. On 8-17-2023, Plaintiff again filed a grievance and a CDC-1824 against Second Watch Control Booth Officer Defendant "Balladera", for refusing to allowed Plaintiff to report to work. Thereby for filing a grievance against Chapel Volunteer Defendant "Landy" and Defendants "Amy Campbell", Defendant "Captain Alexander", Jeff Macomber, Jerome Hill, Plaintiff was retaliated against and received no explanation or committee hearing for cause to remove a incarcerated person from a Job Assignment. DOM Section 53130.9 Assignment: Request for Removal from Program: In pertinent part, "Staff requests for removal from a program shall be submitted to the inmate's counselor on a CDC Form 128-B for consideration by an appropriate classification committee." OR to decreases Plaintiffs Pay. DOM Section 51120.8, Inmate Pay. Therefore, Plaintiff was removed from a second Job Assignment SEmi-Skilled ADA-Work; in retaliation for filing grievance against the abouved named Defendant's Violated Plaintiffs First Amendment Rights to Free exercise to, Redress grievances against government officials.

38. Plaintiff knowns and believes, and thereon allege that Defendant Rivers, conspire with Global Tel Link Corporation (G.T.L) deprivation of Plaintiffs First Amendment Right to Freedom of Association of Family and Friends, and access to

14.

the Courts installation for refusal to answer question to
a unauthorized alleged "Random Threat Assessment"
which there is no such policy as "Random" DOM section:
12040.4 Threat Definition: In pertinent part: "A threat
is an act (verbal or non-verbal) which expresses intent of
malice, harassment, intimidation, or physical expression of
intent to physically injure or harm someone else.
Threat can be divided into the following categories:
1. Direct Threat
2. Hidden/Veiled/Implied Threat
3. Conditional Threat
4. Ongoing Threat."

39. On January 16, 2024 at about 7:15 p.m. State actor Rivera
who was working on Third Watch came to Plaintiff's Cell-C-11-186
and stated to Plaintiff that he was conducting a Random
Threat Assessment for a threat against a Staff or Facility "C".
   Plaintiff ask State actor Rivera what or who is the subject
of making the alleged threat concerning staff? State actor
said it is in General of inmate meaning there is not
any specified group that made the alleged threat.
   Thereafter, about 9:30 p.m. or thereabout, Plaintiff open
the (GTL) Tablet and Chone, Message, Movies, was suspension
for 30-days up to March 16, 2024, from January 16, 2024 and
will be unsuspension at 7:30 p.m. on March 16, 2024. Also
Plaintiff had just pay for 30-days of Movies.

40. Plaintiff filed a grievance concerning the removal of

15.

of Plaintiff Right to have use of the Phone and to
Massage Plaintiff's Family or Friend, and access to the
Court. Because at this time when state action Rivers, conspire
with A.T.L. to retaliated against Plaintiff for not answering
his alleged "Random Threat Assessment", Defendant
Secretary Jeff Macomber, had by Contract gave A.T.L.
Control of all Incarcerated Persons Confine at Richard J.
Donovan Correctional Facility Freedom of Association and
Access to the Courts, due to the fact Plaintiff as a indigent
Incarcerated Person had no access to the state Telephone or did
not received indigent envelopes any more, because A.T.L. provided
free phone Calls, and Messaging on the new require Tablet all
Incarcerated Persons at (RJD) had just been issued a Month
before the incident.

41. Thereafter, Plaintiff had filed a grievance against state
actor Rivers Misconduct of retaliation along with Co-conspirator
(A.T.L.), There was a investigation was initiate, and was discover by
the investigation that Plaintiff committed no misconduct and
thereby, Plaintiff's suspension of Plaintiff's privileges should be
removed. And all relevant documents shall be submitted to the
Office of Appeal.

42. But for the fact to allow Plaintiff to prevail on the fact that
Plaintiff did not violate any rule or regulation Rivers, and (A.T.L.)
put for a new pretext as that put it in a New Rule Violation Report
that "it was discover you allowed L. Hernandez, CDCR # AB0307 to use the
tablet." Plaintiff investigated the matter because Plaintiff know that
this pretext was also retaliation against Plaintiff because of prevailing

16

on the fins & pretext rule violation. Plaintiff located this inmate L. Hernandez cdcr #X03707 in Building Eleven, and this inmate signed a Declaration stating that he does not even knowns Plaintiff and he never use Plaintiff's tablet. Plaintiff will call this inmate as a witness and received a copy of the Declaration.

43. Furthermore this inmate is in the (EOP) Program in Building (15), and Plaintiff is not allowed to be in that Building, and inmate L. Hernandez cdcr #X03707, is not allowed in Building (11) or (12) (13), where non-(EOP) inmates are housed. State actor and (P.T.L.) retaliated against Plaintiff for exercise Plaintiff First Amendment Rights to exercise Cnstut rights to redress grievance again government officials. Accordingly; An inmate has a viable section 1983 claim where a prison officer official files a disciplinary charge in retaliation for the inmate exercise of his constitutional rights such as filing a grievance Sandas v. Hobbs, 773 F.3d 186, 190 8th Cir 2014 Buta disciplinary conviction cannot be deem retaliatory if it was issued for an actual violation of prison rules.

44. In the present cause of action the rule violation report was issue under guise that Plaintiff violated a rule so that State actor Rivers, (P.T.L) would not be liable before this Court. That Court may also cause to answer, Defendant Secretary Jeff Macomber and Defendant James Hill, have notice by authority invest to stop the retaliatory overt act against Plaintiff, but for status by action or inaction by their sinister silence of Plaintiff First Amendment rights, Plaintiff was denied access to the Courts and no correspondence with family or friends for (3) Months.

which cause Plaintiff the precocious of time to talk
with Plaintiff older Brother John before he forgot who
Plaintiff was. By March of 2024, Plaintiff oldest Brother
Memory was gone and he past away 8-months later in November
of 2024. Three Months may not seem like alot of time loss
to the Defendants Rivers, Toth, Jeff Macomber, Tami Wilk,
but to Plaintiff id is time one cannot get back it's gone
for ever. Thereby, each Defendant shall be held to answer,
because to deny a Qualified Individual with a Disability
the benefit of program, activities, Section 12133, For the Remedies
procedures, and Rights set forth in section 505 of the Rehabilitation
Act of 1973, 29 U.S.C. Section 794(a), Section 202 42 U.S.C. Section
12132, basis of Discrimination Violations. American with Disabilities
Act, Section 5 of the Fourteenth Amendment Rights, insofar, as
to Title II of the American with Disabilities Act, 104 Stat. 337,
42 U.S.C. Section 12135-65, which abrogate State Sovereign
immunity under the Eleven Amendment Federal Constitution
Title 42. U.S.C. Section 12101-12213, Via Rehabilitation Act,
because a State program or activity that accepts Federal funds
waives its Eleven Amendment immunity. Thereby, Plaintiffs
First Amendment are not bar by the prison gates. These co-
conspirators who jointly together with Defendant Rivers, and N.T.L.
(are all Caucasian) with the authority to prevent this Victimization of
rights to the First Amendment to redress grievances against government
Officials, with equal protection under the law and violated 42
U.S.C. 1983, 42 U.S.C. 1985(3), 42 U.S.C. 1986, and Fourteenth and
Eighth Amendment of the Constitution against a 63, 64-year old
African-American citizen of the United States American, it was

18.

foreseeable that when HTL was given Control over all persons incarcerated rightfull access to Correspondence, that there would be incarcerated Persons who depend upon the state for indigent envelopes 10-a month to write to family and the Courts or to received a free phone calls during the incarcerated person turn to access the phone sign up list.

45. For HTL to withhold that right and privilege without substantive due process with equal Protection as all other incarcerated person similary situated, and than created a pertext to try and justify their retaliatory overt act is more than a "slap on the hand" would not prevent a conduct of abuse of power. Thereby, Plaintiff ask the Court to call upon the defendants under oath as officer's of the Court to explain their reasoning for their action or inactions.

46. Plaintiff is a qualified individual with a disability that was and is being denied the benefits of programs, activities, services, for incontinence showers on a daily basis due to the injuries Plaintiff suffer (4) different occasions that has cause Plaintiff's health to deteriorate over the years. Plaintiff is 64-years old and will be 65-years old in 2-months, and some days. For a person, no matter his or her age to ask a stranger for a shower because that person can no longer control their bodly functions is imprudent without having to continuow explain the reasoning why that incarcerated person needs a shower, first thing in the morning or in the late hours of the nite or day. Which is apart of the retaliatory act to humiliate the

1  Just because they can without authority putting a
2  stop to it Body Cam or not. Defendants Casten, Prudencey,
3  Moreno, Belladare; Julian Salazar, on different days
4  and times deprivation Plaintiffs the benefits of program
5  activities, services, shower as a incontinent patient, and
6  morning meals Breakfast, and lunch, that a incarcerated
7  Person received at Breakfast before existing the dining hall.
8  47.  On February 8, 2023, Plaintiff filed the first of
9  many grievances concerning not being allowed to received
10  a incontinent shower due to Plaintiffs' serious medical
11  needs from result of life sustain injuries Plaintiff suffer
12  on January 27, 2016, at Calipatria State Prison by (4)
13  State actors in retaliation for filing grievances against
14  co-state actors.
15  48.  After Plaintiff was injury on that date Plaintiff was
16  examine by a doctor the following day. Due to the injury
17  to Plaintiff's hips and lower back L5, the doctor
18  classified Plaintiff as a DPM because Plaintiffs'
19  abilities to walk without any assistance or stand up
20  over a toilet without falling over was serious, and
21  the doctor was real concern about damage he saw in
22  the MRI of my kidney, and let Plaintiffs know that
23  it may come a time when Plaintiff will not be able to have
24  control of the urine leaking out after Plaintiff had urine
25  but all the urine will not release at that time, but later
26  in the day on nite the urine will just release. So the doctor
27  order medication for Plaintiff's kidney which Plaintiff
28  takes two Pills everyday, and Grab Bars by the toilet

in a(two) cell, and a Walker along with the cane
Plaintiff was already using to walk and a Back brace,
and incontinent shower with a shower with Pushb bars
Railing or a Chair to set down and take a shower.

49. All the doctor medical order was permanent. That
was in 2016 and Plaintiff still retain copies of that
order at Calipatria State Prison.

50. Due to the change in Plaintiff's Medical conditions
Plaintiff was transfer to SATF-Facility "C" as ADA Disability
Accommodation also Ground Floor- NO stairs lower Bottom
Bunk only, Lifting Restriction- unable to lift more than 19 Pounds.
Dated 7/12/2016. Data Source: Soms.

51. Plaintiff filed the grievance due to the misconduct
of Facility "C" Sergeant Julian Salazar, who refuse to
allow Plaintiff to receive a incontinent shower unless Plaintiff
gave Sergeant J. Salazar, a bolve bag, which Plaintiff has
never been require to do from the begining in 2016, because
Plaintiff's medical needs was due to urine not (feces),
which Plaintiff try to explain to Defendant J. Salazar, But
for Defendant's interior medical diagnosis for Plaintiff's
serious medical condition deprived Plaintiff of a Medical
shower thereby, Plaintiff had to set in the cell all day until
third watch came on duty at 2:00 p.m= hours later, and
Defendant J. Salazar, told the Central Booth Officer who
was at the time Defendant S. Miyula, who slam Plaintiff
in the yard door in Plaintiff's Wheel Chair excossive-use of
force that this Court has refuse to allow the Clerk to
enter Default, and Default Judgment against Andrilere to

appear scene November the 14th of 2023, which Plaintiff has not received a reply from Plaintiffs Motion to Show Cause why Default or Default Judgment has not been enter to this day.

52. Thereafter, on November 21, 2023, a Staff Misconduct inquiry was open against Defendant J. Solazar, by Number AA975# 20033958.

53. Plaintiff knows and believe that Defendant Balladan, the Second watch Control Booth Officer in Building "11" who was told by Defendant J. Solazar, on February 8, 2023, to close Plaintiff cell door and to not let Plaintiff out to take a incontinent shower, is jointly together in concert with Defendant J. Solazar, and Co-conspirator as such was willing to shower Plaintiff in between Plaintiffs cell door to cause Plaintiff serious bodily harm, with a culpable state of Mind with unnecessary wanton infliction of pain in rebaliation for the grievance filed against Defendant Solazar. It not for that reason what are? Because Plaintiffs had yet to file a complaint against Defendant Balladan, as of yet until Defendant Balladan, for Injuring Plaintiff. And the only reason Defendant Balladan, did not make good on this attempt to harm Plaintiff. And on this date March 28, 2024 Defendant Balladan, would not let Plaintiff out to work no matter how many times Plaintiff ask Why?

52. When Ombudsman Mr. S. Jacoby, walk into Building "11" at that moment, and Plaintiff explain to him the subject matter he got Defendant Solazar, taken off the

22.

Facility and Defendant Salazar, has not been back on the Facility "C". Therefore, Plaintiff would request upon the Court to inquire to Ombudsman S. Jacobs, as to the Subject matter because they will brount through the gates to this Court on Plaintiff's merits for showing a genuine tridable issue along with probative matter to the Court.

53. Plaintiff at the outset connect the link to the chain under the concert of commence, but for the overt act after grievance is filed. Plaintiff will assert Civil Conspiracy as it is in context.

54. "Civil Conspiracy is a combination of two or more persons to accomplish by concerted actions.

As so defined, conspiracy is not a cause of action but a legal doctrine that imposes libility on a person who, although not actually committing a tort themselves share with the immediate tortfeasor common plan or design in its perpetration which Criminal Conspiracies involve separate acts the doctrine provides remedial measure for affixing liability to all persons who have agree to a common design to commit a wrong. The gist of the crime of Conspiracy is an agreement to commit an unlawful act, while the gist of a tortaction for Civil Conspiracy is damage resulting to the Plaintiff from an overt act or acts done pursuant to the conspiracy.

55. Stated otherwise, the act done and resulting damage to the Plaintiff, not the Conspiracy to act is the essence of Civil Conspiracy.

.23

56. Thus, a bare agreement among two or more persons to harm a third person cannot injury. The latter unless and until acts are actually performed pursuant to the agreement. Therefore, it is the act done and not the conspiracy to do them which should be regarded as the essence of the civil action".

57. Plaintiff cannot sit here and tell the court there will be direct evidence to show the Defendants are in a common plan design "Yes". Human being will make mistake whether you wear "Braces or Blue's" wrong is wrong thats commonsense.

57. But Plaintiff has show by the preponderance of evidence that jointly together In Associate-In Fact each Defendant is well aware of the fact that their Supervisor went act what cause the action to arise due to each watch was consist of the same statute act's who was assigned Post orders as original 2nd Second Watch Five days a week Defendant's Castro Second watch five days a week there are 6:00 a.m to 2:00 p.m Defendant Salladeur, was the late comer to the Unit "11" because Defendant S. Nguh, was the Second watch Control Booth Officer 5 days a week until he show Plaintiff in between the Building "11" and the yard Show.

58. Thereafter, being Seniors Defendant Nguh, was transfer to a different Post as if he dont work here anymore Which is lies because Plaintiff seen Defendant S. Nguh, more than three times, Hah, In Term Whole's "Interview Defendant. Defendant Guardern was the 2-days a week relief Wednesday, Thursday, as to Mercer

24

was also a relief 2-days a week mostly weekend
Defendant Moons would come on Cortez and
Hernandez, days, off.

59. The Civil Conspiracy harm from Plaintiff
filing the Grievance against their second watch
leader and the Bad Apple that had spoil the whole
bunch Defendant J. Salazar, thereafter, the first Retaliated
act was by S. Mijule, in the Month of September about the
22 or thereabout, 2023, 7-months from the day Defendant
Salazar, told Defendant Mijule don't let Plaintiff off
incident February 8, 2023, on Second watch 6'ol a.m. in
Building "11" Plaintiff has copies of the Grievance filed
against Defendant Salazar, and at the point time Defendant
S. Mijule, never had any run in before the "Blue Bag" incident.
And the court can take Judicial Notice and review
the Surveillance footage in Facility "C" Building Eleven
from June 20, 2023, up to February 8, 2023, and see that
Plaintiff and Defendant Mijule, never had a bad word
between each of us until Plaintiff filed Grievance against
Defendant Salazar, as the Surveillance is right in front
of Plaintiff's from June 20, 2022, up to August of 2024,
when Plaintiff was move out of Cell 11-126, that is
the only cell Plaintiff has been housed in at
"C Yd", and now Cell 12-130L.

60. Thereafter, Defendant Balladarez, attempt to physically
harm Plaintiff by closing Plaintiff cell-11-126, while
Plaintiff was in bed with all ready for Plaintiff's
Walker with a Seat "DME" July? Like Plaintiff

25.

stated, when a human makes a intentional
mistake, he or she should say first before anything.
"Oh I apologize did the door hit you? Are you
hurt." But Defendant Balladare, review the Building
Surveillance footage for March 23, 2024. Defendant
Balladare, just sneer as if to intimidate Plaintiff
or chill Plaintiff on going suit against
Defendant S. Mizule.

61. Thereby, the next pretext to deny Plaintiff
a incontinent shower, by stating that a permanent
accommodation chrono all of a unexpected occurrent
now is the SUMS has discontinued Plaintiff incontinent
shower chrono "discontinue", that sound just what
Defendant in the Eastern use to justify making
Plaintiff to a none ADA without grab bar by
the toilet, because Plaintiff grab bar chrono his
been discontinue, but it has been permanent
as of back 2016. But the no chairs, the bottom
bunk, Walker with a seat, wheelchair, cane, back
brace, all permanent but they have not been
discontinue? Why is that? But the same only
said the . incontinent shower only why?
Because it causes more injury because of the
stink of urine on you and there is no other way
to get it off but for a shower.

62. So now Defendant Cashro, Floor Officer "one"
Defendant Munez, Defendant Guardner, and
Defendant Balladare, Control Booth Officer who

26.

Control all the cell doors in the Building and the gate to let you out the Building. Without the Control Booth Officer on board the retaliatory act with not succey, because the Control Booth Officer only have to say "no I'm lobby him out for his shower if you guys want to talk with the Sergeant, until he tells me different." And it would be over with, because nine out ten times the Control Booth is a senior staff member with about 20 & 25 in so they bid on Control Booth posts because they are kick back position 8-hours and you have, because the only thing the Control Booth Officer does is to open and close door and shut you if you get out of line.

63. The second overt act in retaliation for exercises Plaintiffs protected right to Redress grievance against Government official.

64. Defendant Castro, Warner, 1. Arredondo, and Belladare, came up with a cruel scheme. On April, 11, 2024, These defendants approach Plaintiff after Plaintiff requested a incontinent shower. Defendant Castro, spoke on the behalf of the other Co-Conspiracy to accomplish their common plan design to "Chill" Plaintiffs First Amendment rights to Freedom of Speech, and Association Jointly together with Capable Minds. Defendant Castro, first narrative began "We just look at the "SOMS", and your incontinue shower has been discontinue. So but for that Date there

was no such list _____. Therefore, Plaintiff filed a con-1824 to the Institution Reasonable Recommendation Board explaining this new retaliatory act.

65. On May 7, 2024, Plaintiff received a response that in pertinent part: Inmate Wilson has not been informing staff that he is having accidents which is not, policy." So that first it went to Inmate Wilson has not been informing staff that he is having accidents which is not policy." But neither of the defendant say anything about ("cons"), that Plaintiff incontinent showers had been discontinue".

66. On April, 26, 2024 Plaintiff was interview by the Armstrong Court Compliance Sergeant concerning the subject matter. Plaintiff was inform that the staff cannot remove Plaintiff from the incontinent list. But again that is not the issue, Defendants said Plaintiff was discontinue incontinent shower.

67. On May 7 2024, Plaintiff received a second res, more that Defendants will comply with policy for their") incontinent showers.

68. On June 14, 2024, Plaintiff was given alternative to either take your(Plaintiff), incontinue shower when your tier is release for Morning Breakfast or go to: Morning Breakfast and come back and received your (Plaintiff) incontinent. Catch-22, if Plaintiff go's right to morning Breakfast smelling like urine, or take a shower when Plaintiff tier is release for morning meal, and by the time Plaintiff was done showering the Morning meal will been over. From June 14, 2024, up to this date February

11, 2025, Plaintiff's not been able to received a morning
meal or Lunch, because each person gots a Lunch upon
exist the Chow Hall. June 14, 2024, Plaintiff weight
172, pounds now to day Plaintiff weight 151 pounds
a lose of 21 pounds due to each defendant named
above resisted to Cruel and unsual punishment denying
Plaintiff the necessities of life by deprivation of
food cause Plaintiff future health endanger. By defendants
Conspire to deprivated Plaintiff among the
minimal Civilized measure of life's necessities
food.

69. From June 14, 2024, When defendants gave Plaintiff
alternative food or incontinent shower, up to February
11, 2025, as of now. Thereby, Plaintiff was deny 180-morning
Meals and Lunchs Plaintiff was deprivated by Defendants.

It is the reason the High Court held refuse a bad
for a food is always retalitory. Each Defendant shal
be held to answer as to deprived a Juditied Individual
the benefit of programs, activities, services, "shower" and
"Food," and Water.

70. As Plaintiff said before On June 20, 2023,
Plaintiff was Temporary Transfer here at ("RJD"), An
Court proceeding that's it. On August the 16th of
2023, Plaintiff was given Job assignment as Chapel
Clerk/Paralegal hours Five-days a week and received
a pay number. Plaintiff also was removed from the
Chapel Clerk position to (ADA SEMI-stilled), with
out cause being show. On November 29, 2023, Thereafter,

29

On April 30, 2024 Plaintiff was again removed from the SEME-Skilled ("ADA") worker in without showing cause to deny Plaintiff Substantive Due Process Clause of the Fourteenth Amendment to Equal Protection, as similarly Situated Persons.

Thereby, Plaintiff was place in the following job position as ccgms Tailer Cobber, and after the last Cobber went to a new job, Plaintiff went from being assigned on April 30, 2024, Plaintiff was removed from SEME-Skilled (ADA) worker, without cause and put Plaintiff, in the ccgms Tailer with no cause hearing.

71. Plaintiff going to work backward to allow the Court to recognition of the same old play back.

To Sit a trap one must first put all the pieces together. Plaintiff follows the commonsense of Judge "Judy" if it does not make sense "it, is not true."

As to the Claim first Plaintiff was removed out of each position in retaliation of Plaintiff exercise Protected Rights, as such Plaintiff could do one or two things each time Plaintiff was being removed from all Jobs and now a Third Job, Plaintiff could have "refuse to accept" the new positions, or "refuse to report to work" be both instant Plaintiff comes out breaking rules, which would be a cdc-115 with merit to it. Or Plaintiff can keep doing what is right and report the "Misconduct" Plaintiff cannot look like the one retaliating for being wrote up, that would be true. When Plaintiff was assigned to the Chapel Clerk position by the Assignment

30.

lieutenant was due to the fact Plaintiff held Chapel
Clerk position at Los Angeles State Prison (LAC) in 1996-1998
due to Plaintiff supervisor grading on Plaintiff's CDC-101-
6-month review. Therefore, Supervisor presented Chrono to
retain Plaintiff in the Chapel position for another year, but
that request has to be put due to the Institution Classification
Committee Chair by the Warden or he or her appointed
designate to stand in, as such Plaintiff was granted that
incentive as a reward for doing a Job well done.

72. So when Plaintiff received the Notice and assignment
hours on August 16, 2023, Plaintiff reported to work and had
the face to face meeting with Defendant Amy Campbell,
Chaplain of Facility "E" and other Facilities. At that meeting
Defendant Campbell, inform Plaintiff that the only thing
[she] Defendant Campbell, wanted to do for me is bless me.

Thereafter, also Defendant Campbell, let Plaintiff know that
there are religious leaders whom has been appointed by Defendant
Campbell, and they retain a lockers with locks on them inside
the Clerks Office, but not in the lockers where different
Religious guys kept there materials they use during their
services. As such Plaintiff express the need for the Clerks
office to retain some form of protection due to the different
tools within the Office which Plaintiff will be held accountable
if come up missing due to Plaintiff being assigned to the
position as Chapel Clerk.

73. Plaintiff statements did not set well with Defendant Campbell,
because her response was "I make those decisions. Plaintiff
did not argue the point, but did not dismiss Plaintiff

1  Commonsense. On September 2, 2003, Plaintiff now have only
2  been in the Job position 12 days at this point On this date
3  which is the first time Plaintiff came into contact with
4  Defendant Randy, the Religious volunteer and Defendant
5  wife who also volunteer.

6  74. The first thing that comes out of Defendant Randy,
7  was I would like to talk to you in the Office, due to the
8  fact when Plaintiff got to work service had already begun.
9      Plaintiff said ok, and both Defendant Randy, and his
10 wife follow behind me. We all walk one of them close
11 door, and Defendant Randy, stated "are you the New
12 Clerk who is complaining about Our" Religious leaders
13 having lockers in the Clerks Office."

14 75. First Impression is this inmate one of the religious
15 leaders he is Mexican and all but two names on the locker
16 Mark religious leader do not have a Mexican last name like
17 Gomez. So Plaintiff response was who are you and her?
18      Defendant Randy "said we are the volunteer who acquired
19 the religious leaders these lockers for their religious service". "So
20 whats your [Plaintiff] problem"? Plaintiff first said "good morning
21 My name is Donald Wilson #89388, Plaintiff is housed in Cll-
22 126b, so if you need me you call the Building and Plaintiff
23 will come and help you the best Plaintiff can, Plaintiff
24 statement went right over Defendant Randy, head and
25 his wife.

26 76. Thereof, Defendant Randy, stated "if you[Plaintiff]
27 has a problem with our adversity thats to bad; No the fact
28 "I [Defendant Randy] want you[Plaintiff] here at the

Chapel First thing in the morning on Mob these Floors"

Plaintiff response was "No and you Defendant Randy)

are not my supervisor, Chaplain Campbell, who sign on

Plaintiff's time Card." Defendant Randy, said are you

[Plaintiff] disobeying a direct order"? Plaintiff said no

Plaintiff Supervisor Defendant Campbell, already **had** deecum

concering mopping the floor due to Plaintiff's disabilities"

Defendant Randy, stated "Oh you are one of them." Plaintiff

ask what does that mean Plaintiff is one of them"? Defendant

Randy, did not response, but went back to the religious leaders.

Plaintiff, told Defendant Randy, Plaintiff will be right

back. Plaintiff went down to the program office on Facility

"C" and ask one of the Officers standing outside the tier by

program office and ask him could he come down to the

Chapel, because I [Plaintiff] needs his expertise as security"

He said "yes" Plaintiff and the Correction Officer walk back

to the Chapel and enter the Chapel Clerks Office with both

Volunteers Defendant Randy, and his wife. Plaintiff ask

this Correction Officer one question "Plaintiff is the only

incarcerated person assigned to this Office as a Chapel Clerk,

if anything comes up missing from this Office Ala the

counting of tools and one is missing who will be held

responsible for it"? The Officer response was on "Body Cam"

That "Plaintiff will be." Plaintiff turn to Defendant

Randy, and look right at Defendant and ask the Officer

"What about these inmates Religious leaders that are not assign

to this Office, would they be held accountable for a missing

tool, No the Officer said No." Plaintiff then said to

Defendant Randy, and his wife due to Plaintiff
Physical Impairments Plaintiff needs the DME outside
the Office to get around, and Defendant Campbell is allowing
Plaintiff to have a inmate help Plaintiff to pass the Bars
so if you have [Defendant Randy] a problem with that
speak to Defendant Campbell.

78. To protect Plaintiff's interest Plaintiff filed a
grievance against Defendant Randy, for discrimination
and the grievance Office Granted Plaintiff's grievance and
stated that "Plaintiff has the right to use DME Walker
with a seat to perform Job duties if necessary" On 9.2.2003

79. Thereafter, was contacted by Defendant Randy, and 6 inmates
who were the so called religious leaders on November 12, 2003,
when Plaintiff report to work in the Chapel Defendant
Randy, at that time told Plaintiff that authority was
given to Defendant Randy, the Volunteer, to replace Plaintiff
as Chapel Clerk. Plaintiff then asked Defendant Randy
who gave the authority to you[Defendant Randy] the
response was that Defendant Campbell did. And then
Defendant Randy, pointed to one of the religious leaders
a white inmate, and stated this is the new Chapel Clerk.

Plaintiff said no he is not until Plaintiff is remove
from the Job position by a Classification Committee and
left the Chapel. Thereafter, Plaintiff would request to
get the religious services list signed by the custody Facility
Second watch Sergeant, and Plaintiff was told that
Facility Captain Alexander instructed the sergeants not
to signed any religious services list issued by Plaintiff.

34.

80. Last but not least Plaintiff On January 29, 2025, or thereabout, sent a "Actual Notice" to Defendant JoAP Macomber, an ask Defendant why was Defendant deleting Plaintiff new Job position which is a pay position?

Thereafter, this new supervisor who has only been assigned at the post where Plaintiff is now working is M. Fredrict. On January 28, 2025, Defendant Fredrict, stated to Plaintiff that being that "I" [Defendant Fredrict] has a lot of connections even people who are on the Board of Prison Terms, and "it a inmate trys to get "him" [Defendant] into trouble he better not go to the board at this prison". And than Defendant Fredrict, said "I" [Defendant], should get one on these positions delete, because "I" [Defendant] only need one worker".

81. The next day Plaintiff was not allowed to go to work January 29, 2025, On about February 7, or 8, of 2025, Plaintiff received word that Plaintiff position is not to be delete. On February 11, 2025 Plaintiff received a False disciplinary report in retaliation for sending a "Actual Notice" of Misconduct by New Supervisor Fredrict threatening Plaintiff with deleting Plaintiff Job position. Plaintiff waived investigating officers, and any delay, but to hold the disciplinary hearing as soon as require, and plaintiff request all 3BUCJAUSS as evidence of Plaintiff's innocence. To this date no hearing has been held February 17, 2025.

82. On August 4, 2024, Plaintiff filed a grievance as to the issue of the Inmate Trust Account Office was Garnishment of Funds in violation of the court order to Collect Filing fees from Plaintiff upon moneys Plaintiff may received that amount to $46.00. On October 31, 2024, this court order the following: "During the six months prior to

35.

filing suit, Claintiff Trust account statement. Exc. No. 3. During
the six months prior to filing suit, Plaintiff had an average
monthly balance of $16.16, average monthly deposits of $12.38, and
an available account balance of $0.00 at the time he filed suit.
Id. at 1. Accordingly, the court Grants Plaintiff's IFP motion and
assesses an initial partial filing fee of $3.22 pursuant to 28 U.S.C.
Section 1915(b)(1). However, this initial fee need be collected
only if sufficient funds are available in Plaintiff's account
at the time this Order is executed. See 28 U.S.C. Section
1915(b)(4)(providing that "[i]n no event shall a prisoner be
prohibited from bringing a civil action or appealing a civil
action or criminal judgment for the reason that the prisoner
has no assets and no means by which to pay the initial partial
filing fee"); Taylor, 281 F.3d at 850 (finding that 28 U.S.C. Section
1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's
IFP case based solely on failure to pay... due to the lack of funds
available to him when payment is ordered."). and however whatever
balance remains of the full $350 owe in monthly payments, in an amount
equal to twenty percent 20% of the preceding month's income to
the Clerk of the court each time the amount in the account
exceeds $10 pursuant to 28 U.S.C. Section 1915(b)(2)

On September 6, 2023, Plaintiff received a inmate pay - support
from Plaintiff's Job position in the amount of $0.56 with a b. 056
that was on Plaintiff's account. The Defendants in the Trust account
office declared 5.84 for Restitution Fine payment and withheld
Plaintiff's remaining funds in Encumbrance Type $5.28, in other
words in abeyance to hold back for payment when Trust account amounts
to $100 again. And again for Plaintiff's Job Support pay of October 7, 2023

1. Plaintiff received $17.00 add the $5.28 which add to $2284, the
2. inmate trust account Office deducted $8.50 restitution fine, and
3. alleged $5.00 for kiosk request with $5.00, and put $8.60 in the
4. Encumbrance Type which is abeyance to which back to Plaintiff next
5. inmate payment. Thereby, Plaintiff would not be able to have any
6. money in Plaintiff account to buy any necessities Plaintiff needed
7. for like Toothpaste, Soap, or anything. This the trust office is doing
8. in retaliation for Plaintiff filing civil suits.
9. P3. The Defendants in the trust account justified their actions as
10. the following "The remaining funds was divided and encumbered for
11. potential payment to CTRA filing fees." In other words you owe a civil
12. judgment on the court under the Trust account Office if Government
13. Plaintiffs funds even until all filing fees are pay. Defendant does not
14. owe the court a civil payment of property lost by the Plaintiff only
15. filing fees if you the amount of $1.00 or more at the time in Plaintiff account.
16.    Thereby, if Plaintiff received $20.00 inmate pay. The trust office take
17.    20 percent of each $10.00 dollars, 20 percent times $20.00 is $4.00
18. which would leave Plaintiff with $16.00 to spend for Plaintiff. That
19. the Defendants in the inmate trust office is putting the $4.00 in the
20. Encumbered section until next payment, and thereafter the
21. same process is done.
22.
23.                          Prayer For Relief
24.    (1.) Each Defendants are Vicarious collectively liability for
25. the injuries cause by each Defendants, of Actual Damages of 1.00.000.
26. dollars for each cause of Action proven by the court, and punitive
27. damages in the amount of $10,000.00 dollars as to the conduct of each
28. Defendants found by the court.
    (2.) Plaintiff request for injunctive relief, to remain in a non-call

37.

1. with Grab Bars by the toilet as long as the Medical Chronos states.
2. (3). The Court stop the Defendant from denying delaying Plaintiffs
3. Incontinent showers.
4. (4) Plaintiff to not be denied Food for any reason.
5. (5) Plaintiff be not denied water that or cool for any reason.
6. (6) Plaintiff be given back any from Job positions as Chapel Clerk,
7. (7) SEME Skilled ADA worker,
8. (8) CCMS Teacher Clerk and Cobbler, that was taken from Plaintiff
9. with out cause by a Classification Committee.
10. (9) That all Defendants are being sue in their Individual Capacity except
11. Defendant Jeff Macomber, Jaime Hill, which are sue in their both
12. Official Capacity and Individual Capacity.
13. (10). Defendants are state actors being sue under the Color of State law
14. for violation of Plaintiffs First, Eighth, Fourteenth Amendment to
15. the Constitution of the United States. Freedom of Free Speech, Freedom
16. of Association, Substantive Due Process of law, Equal Protection of
17. law, Deliberate Indifference to Plaintiffs Serious Medical Needs, Cruel and
18. Unusual Punishment, Deny the benefits of programs, activities Service, with
19. Reasonable Accommodation for a cell with Grab Bars by the toilet, incontinent
20. showers, Food, water, operative sink and toilet.
21. (11) The the Court Order Plaintiff transfer back to Plaintiffs original
22. Institution (LAC)
23. (12) That all bonds disbursement from Plaintiffs trust account repay to
24. Plaintiff.
25. (13) That all retaliatory acts stop against Plaintiff during the
26. pending sue, and thereafter.
27. (14) Plaintiff reserve the right to file third Amended Complaint against
28. Defendant Stradberg, after appeal is exhausted by the Internal Affairs Office for Sexual Misconduct.

38.

1.
2.
3.  Executed: February 19, 2025
4.
5.
6.
7.                                          Respectfully Submitted
                                            /s/ Ronald Wilson #389300
8.                                          Ronald Wilson #389300
9.                                          Richard J. Donovan Correctional
10.                                         Facility,
                                            Facility C-12-138 L
11.                                         480 Alta Road
12.                                         San Diego, Ca 92179
13.                                         In Pro Per
14.
15.
16.
17.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.

Proof of Service

I, am of the age of 18 years old

I, am currently housed at Richard J. Donovan Correctional Facility, Facility C-12-138th, 480 Alta Road, San Diego, California 92179.

On this day Plaintiff Place in the United States Mail Box one Sealed envelopes one Original hand written First Amended Complaint with Plaintiff Declaration attached hereto.

Plaintiff by placing said envelope in the U.S. Mail Box Sealed by Correctional Officer in Building "12" and signed by Correctional Officer. And Delivery to the Attorney listed below.

United States District Court
Office of the Clerk
Southern District of California
333 West Broadway, Suite 420
San Diego, Ca 92101

Plaintiff declare for the foregoing to be true and correct under the penalty of perjury

Executed: February 17, 2025.

Darell Watson #368500
Petitioner
In Pro Per.

1. Arnold Wilson #B-93800
2. Richard J. Donovan Correctional Facility
3. Facility C-12-131L
4. 480 Alta Road
5. San Diego, Ca 92179
6.
7. In Pro Per
8.
9.                     United States District Court
10.                     Southern District of California
11.
12.     Arnold Wilson                     Case No. 24-cv-1079-MMA (MSB)
13.         #B-93800                        "
14.         Plaintiff                       Plaintiff's Declaration In Support
15.     v.                                  Of Plaintiffs First Amended
16.                                         Complaint."
17. Secretary Jeff Macomber et. al.,
18.         Defendants
19.
20.         Plaintiff is the party of the entitle Civil Rights Action
21. 42 U.S.C. Section 1983. All Statements made are of Personal
22. Knowledge of Plaintiff. Due to Plaintiff being unable to attend
23. Plaintiff access to the Institution law library, Plaintiff is
24. unable to retain the copies Plaintiff needs for the the Court.
25.     Plaintiff would request the Court to not sanction Plaintiff
26. due to the fact Plaintiff cannot provide to the Court the copies.
    Plaintiff declare the forgoing to be true and Correct.
27. under penalty of perjury.                       Respectfully Submitted
    Executed: February 17, 2025
                                                    Arnold Wilson #B-93800
                                                    Petitioner
                                                    In Pro Per

                        1.



Jerrell Montgomery H52822
Facility C10-132L
480 Alta Road
San Diego, Ca 92179

California Department of
Corrections and Rehabilitation

Confidential Mail

TO: United States District Court
Attn of the Clerk
Southern District of California
333 West Broadway Ste 420
San Diego, Ca 92101

RECEIVED
FEB 2 6 2025
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY