UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD J. WILSON,<br>CDCR #B-93800<br><br>                     Plaintiff,<br><br>vs.<br><br>JEFF MACOMBER, et al.,<br><br>                    Defendants. | Case No.:  24-cv-1079-MMA-AHG<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1)** |

**INTRODUCTION**

Gerald Wilson ("Plaintiff" or "Wilson"), an inmate currently confined at R.J. Donovan Correctional Facility ("RJD") is proceeding *pro se* with a civil rights action pursuant to 42 U.S.C. § 1983.  This Court dismissed Plaintiff's original complaint for failure to state a claim and granted Plaintiff leave to amend. Doc. No. 4.  After an extension of time, Wilson filed a First Amended Complaint ("FAC").  Doc. No. 7.  For following reasons, the Court **DISMISSES** the FAC for failure to state a claim.

**SCREENING PURSUANT TO 28 U.S.C. § 1915(e) AND § 1915A(b)**

**A.  Legal Standard**

As with his original complaint, because Plaintiff is proceeding IFP, the Court must screen the FAC and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint to "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id*.

To state a claim under § 1983, a plaintiff must plausibly allege "both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.  Plaintiff's Allegations**

Wilson alleges that on June 20, 2022, he was transferred to RJD from California State Prison, Los Angeles County ("LAC") to attend court proceedings. FAC ¶ 24. When those proceedings concluded on July 18, 2022, RJD officials failed to transfer him back to LAC. *Id*. ¶ 25. At some point, Plaintiff filed a grievance about the matter. *Id*. ¶ 26. Thereafter, he sent "notice" to Hill and Macomber "concerning the misconduct of [their] employees" in refusing to transfer him back to LAC. *Id*. ¶¶ 27, 28.

| | |
|---|---|
| 1 | On August 16, 2023, Wilson was assigned a job as "chapel clerk/porter." *Id.* ¶ 30. |
| 2 | On September 2, 2023, Wilson had a disagreement with Defendant Randy, an RJD chapel |
| 3 | volunteer, about whether inmates should be permitted in the chapel clerk "office." *Id.* ¶¶ |
| 4 | 30–33. Randy got upset with Wilson and told him to report to the chapel the next morning |
| 5 | to "mop the floors." *Id.* ¶ 34. Plaintiff told Randy that he had a physical disability the |
| 6 | required him to use a "walker with a seat" to "get around." *Id.* Randy responded, "You |
| 7 | are one of those people." *Id.* On November 12, 2023, Wilson reported to work at the |
| 8 | chapel and Randy told Wilson that "he was given the authority to remove [Wilson] from |
| 9 | being the clerk because [he] cannot do the job assignment without his [walker]." *Id.* |
| 10 | Wilson filed a grievance about the situation that same day. *Id.* He filed another grievance |
| 11 | on December 21, 2023. *Id.* ¶ 36. Ultimately, Wilson was relieved of his job as chapel clerk |
| 12 | and was "replaced with a white clerk." *Id.* ¶ 35. He was given another job as an "ADA |
| 13 | worker," but with lower pay. *Id.* ¶ 37. |
| 14 | On January 16, 2024, Defendant Rivers came to Plaintiff's cell and told him he was |
| 15 | "conducting a random threat assessment." *Id.* ¶ 39. Wilson refused to answer Rivers' |
| 16 | questions. *Id.* ¶ 38–39. Shortly thereafter, Wilson noticed the tablet he uses for "phone |
| 17 | messaging [and] movies" was "suspended for 30 days." *Id.* ¶ 39. The tablet is provided to |
| 18 | RJD inmates by Global Tel Link ("GTL"). Wilson alleges Rivers was responsible for |
| 19 | deactivating the tablet "in retaliation" for Wilson's refusal to answer the threat assessment |
| 20 | questions. *Id.* ¶ 40. Plaintiff filed a grievance about the matter. *Id.* ¶ 41. At some point, |
| 21 | Wilson learned Rivers had accused him of allowing another inmate to use is tablet, in |
| 22 | violation of prison rules. Wilson states this allegation was false and raised only as a |
| 23 | "pretext" for Rivers' retaliation. *Id.* ¶ 42, 44. He also alleges GTL also conspired with |
| 24 | Rivers to deprive him of the use of his tablet. *Id.* ¶ 45. During the suspension of his tablet |
| 25 | privileges, Wilson was unable to communicate with family and friends outside the prison. |
| 26 | *Id.* ¶¶ 40, 44. |
| 27 | Wilson is a "qualified individual with a disability." *Id.* ¶ 46. Among other things, |
| 28 | he experiences from urinary incontinence during sleep, which necessitates he take morning |

showers. *Id.* On February 9, 2023, Defendant Salazar refused to allow Wilson to take a morning incontinence shower because Wilson did not have a "blue bag"[1] to turn in. *Id.* ¶¶ 47, 51, 59. As a result, Wilson had to wait until 2:00 p.m. to take a shower that day. *Id.* ¶ 51. Plaintiff filed a grievance about the issue. At some point, Salazar also told Defendant Balladare "not to let Plaintiff out to take an incontinence shower." *Id.* ¶ 53. Other correctional officers, including Defendants Castro, Moreno and Guckdrier, told Plaintiff that his "incontinence shower chrono" had been "discontinued." *Id.* ¶ 61, 63. On June 14, 2024, however, Wilson was given the choice to either take his incontinence shower when his tier is released for morning breakfast or to go to morning breakfast first and take his incontinence shower after. *Id.* ¶ 68. Wilson states these options are unworkable because if he takes a shower before breakfast, he does not have time to make it to the dining hall before the end of breakfast. And waiting until after breakfast to shower would force him to go to breakfast "smell[ing] of urine." *Id.* As a result of this "Catch-22," Plaintiff has missed numerous meals and lost 21 pounds over the course of six months. *Id.* ¶¶ 68–69.

## C. Discussion

In his FAC, Plaintiff names fifteen defendants: James Macomber, James Hill, M. Colnier, J. Salazar, Guckdrier, Amy Campbell, Randy, Rivers, Castro, Moreno, Balladare, Alexander, Bracamonte, Global Tel Link ("GTL") and Torres. FAC ¶¶ 8–21. Under the heading in his FAC labeled, "Cause of Action," Wilson lists only "conspiracy." *Id.* ¶ 5. However, throughout the FAC Wilson also makes references to violations of the Due Process Clause, the Equal Protection Clause, the First Amendment, and the Eighth Amendment. He also appears to allege violations of his rights under the Americans with Disabilities Act ("ADA) and Rehabilitation Act ("RA") *Id.* at ¶ 23. He seeks money damages and an injunction and injunctive relief. *Id.* at pp. 37–38.

Plaintiff raises several legal claims related to four general issues he has regarding

---

[1] While Plaintiff does not elaborate on the meaning of "blue bag," it appears to be a reference to a receptacle for waste.

4

the conditions of his confinement at RJD, which the Court will discuss in turn: (1) the denial of his transfer to another prison; (2) his work assignment; (3) the suspension of his tablet privileges, and (4) his access to incontinence showers.

### 1. **Failure to Transfer**

As he did in in his original complaint, Wilson again alleges he was transferred to RJD from LAC for an "out-to-court proceeding" and when those proceedings ended, Defendants Hill and Macomber failed to transfer him back to LAC. FAC ¶¶ 24–29. He alleges Hill and Macomber violated his right to due process, equal protection and to be free from retaliation. *Id.*

#### a. *Due Process*

As discussed in the Court's previous screening order, decisions regarding prison transfers do not implicate a liberty interest, and thus does not implicate the due process clause *Meachum v. Fano*, 427 U.S. 215, 224–25 (1976) ("Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system."); *see also Olim v. Wakinekona*, 461 U.S. 238, 247 (1983). Nor does the fact that Plaintiff is now confined at a prison farther away from his family implicate any constitutional interest. *See Anderson v. Deleon*, 2013 WL 892276, at *5 (N.D. Cal. 2013) ("Loss of a prison job, assigning an inmate to a prison far from his family and friends, and the like, which result from interprison transfers, are not constitutionally protected interests.") (citing *Olim*, 461 U.S. at 247). Therefore, Wilson has failed to state a due process claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

#### b. *Equal Protection*

Wilson alleges he was denied the transfer in violation of his right to equal protection. FAC ¶ 29. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v.*

*Doe*, 457 U.S. 202, 216, (1982)). A plaintiff alleging denial of equal protection § 1983 must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent. *See Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

Wilson has failed to state a claim. "[A] nonconsensual [prison] transfer is not per se violative of . . . equal protection rights." *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991). And while Wilson alleges he was treated differently than "other similarly situated persons," FAC ¶ 29, he fails to identify any such individuals or explain how they were treated differently. *See Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (rejecting equal protection claim where inmate failed to show that he was treated differently than any other inmates in the relevant class). Moreover, Wilson offers no facts suggesting he was intentionally discriminated against by any defendant. In short, Plaintiff's conclusory allegations are insufficient to state an equal protection claim. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (holding that a "bald allegation" of discriminatory, "impermissible motive" on the defendants' part "standing alone, is conclusory and is therefore not entitled to an assumption of truth"). Therefore, Wilson's has failed to state an equal protection claim based on the denial of his prison transfer. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

    **c.**    ***Retaliation***

Wilson alleges Hill and Macomber violated his First Amendment right to be free from retaliation. FAC ¶¶ 27, 28. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Here, Plaintiff alleges he sent "notice" to Hill and Macomber after their "employees" failed to transfer him back to LAC and neither stepped in to rectify the situation. FAC ¶¶

27, 28. To the extent Wilson alleges that Hill and Macomber (as RJD Warden and CDCR Secretary, respectively) are liable for retaliation merely because they are supervisors, and later learned of later learned of alleged retaliation by subordinates, he fails to state a claim. *Cf. Ashcroft*, 556 U.S. at 677 (holding a supervisor's "mere knowledge" of a subordinate's alleged unconstitutional conduct is insufficient to state a claim). Each defendant must be aware of the protected conduct and that conduct must give them a retaliatory motive that causes the chilling adverse conduct. *Id.* And here, Wilson alleges only that, at some unspecified time after his transfer was originally denied, he sent "actual notice" to Hill and Macomber about the "unwillingness" of their employees to transfer him back to LAC. FAC ¶¶ 27, 28. He does not indicate either Hill or Macomber were aware of any protected conduct or personally involved in the decision not to transfer him to LAC.[2] Therefore, Plaintiff has failed to state a First Amendment retaliation claim against Hill and Macomber based on the failure to transfer him back to LAC. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### 2. Work Assignment

Wilson alleges he was improperly removed from his work assignment as a "chapel clerk porter" in violation of his right to due process, equal protection, the First Amendment and in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). FAC ¶¶ 30–37.

#### a. Due Process

Wilson fails to state a due process claim because inmates do not have a constitutional right to a particular job assignment. *Flittie v. Solem*, 827 F.2d 276, 279 (8th Cir. 1987) (citing *Lyon v. Farrier*, 727 F.2d 766 (8th Cir. 1984); *Peck v. Hoff*, 660 F.2d 371 (8th Cir. 1981); *see also Walker v. Gomez*, 101 F. App'x 200, 203 (9th Cir. 2004) ("There is no constitutional right to a work assignment.").

---

[2] In his original complaint, Wilson stated the ultimate decision to retain him at RJD was made by the Unit Classification Committee. *See* Doc. 1 at 19.

### b. Equal Protection

Plaintiff alleges he was relieved of his job as a clerk in violation of his right to equal protection. He appears to assert that he was removed from his job both because of his race and his disability. *See* FAC ¶¶ 30, 33. As discussed above, to state an equal protection claim, Plaintiff must allege facts sufficient to show that prison officials intentionally discriminated against him based on his membership in a protected class, *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013), or that similarly situated inmates were treated differently without a legitimate penological purpose. Here, Wilson states he was the "first Black chapel clerk" and he was "replaced by a white clerk." FAC ¶ 33. But this is insufficient to show he was removed from his position *because* of his membership in a protected class. In addition, as discussed in this Court's previous screening order, "the disabled do not constitute a suspect class for equal protection purposes." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001). In sum, Wilson's conclusory allegations are insufficient to show he was intentionally singled out for disparate treatment by any defendant. *See Moss*, 572 F.3d at 969 (holding that a "bald allegation" of discriminatory, "impermissible motive" on the defendants' part "standing alone, is conclusory and is therefore not entitled to an assumption of truth"). Therefore, Wilson has failed to state an equal protection claim stemming from his job reassignment. *See Iqbal*, 556 U.S. at 678; 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### c. Retaliation

Wilson has failed to state a retaliation claim against Defendant Randy, whom Wilson states is an RJD chapel "volunteer."[3] Plaintiff states that on September 2, 2023, he had a

---

[3] Generally, "conduct by private actors is not state action." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011). Private parties, however, may be held liable for alleged violations of rights under the United States Constitution under 42 U.S.C. § 1983 when "the party charged with the deprivation [of a federal right is] a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). For purposes of screening only, the Court presumes "Randy" to be a state actor.

disagreement with Randy about allowing inmates into the chapel clerk's office. FAC ¶¶ 30–33. He alleges that on November 12, 2023, Randy told Wilson he was relieved of his job assignment because he could "not do the job assignment without his [walker]."[4] *Id.* ¶ 34. "On the same date," Wilson filed a grievance against Randy. *Id.*

Wilson has failed to allege any facts to show Randy relieved him of his job because he engaged in "protected conduct." *Loftis v. Montes*, 2019 WL 3806388, at *3 (C.D. Cal. 2019) (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)); ("In the prison context, not all speech is protected speech." A mere disagreement about access to the chapel clerk's office is not protected conduct. *See id.* (concluding "verbal challenge" to correctional officer is not protected speech); *see also Quezada v. Herrera*, 2012 WL 1076130, at *4 (E.D. Cal. 2012) (complaining that inmates had to wear hairnets not protected speech); *Ruiz v. Cal. Dept. of Corr.*, 2008 WL 1827637, at *2 (C.D. Cal. 2008) (prisoner's comments expressing dissatisfaction about matters of personal concern to inmate was not a matter of public concern protected by the Free Speech Clause); *Whitfield v. Snyder*, 263 F. App'x 518 (7th Cir. 2008) (prisoner's complaint about prison job involved matters of personal, rather than public, concern and did not qualify as protected speech).

Moreover, even presuming protected conduct, Plaintiff has failed to plausibly allege such conduct was a "substantial" or "motivating" factor behind the decision to relieve Wilson from his job as chapel clerk. *See Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009). Timing alone is not sufficient to demonstrate causation. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). And "[m]ere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). Nor has Wilson met

---

[4] The Court notes that in his original complaint, Wilson asserted he was relieved of his job as chapel clerk on January 4, 2024 by Campbell, the RJD chaplain. Doc. No. 1 at 26. Plaintiff is cautioned that while an amended complaint generally supersedes a prior complaint, *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc), a plaintiff "cannot amend pleadings to directly contradic[t] an earlier assertion made in the same proceeding." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt*, Inc., 744 F.3d 595, 600 (9th Cir. 2014) (alteration in original) (internal quotation marks and citation omitted).

his burden to allege a lack of penological interest. *See Watison*, 668 F.3d at 1114 ("[I]n addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were unnecessary to the maintenance of order in the institution."). And finally, Wilson has not alleged the adverse action "would chill or silence a person of ordinary firmness from future First Amendment activities.) *See id.* Therefore, Plaintiff has failed to state a First Amendment retaliation claim against Randy. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### d. ADA and RA

Next, to the extent Plaintiff seeks to allege his removal from his job as chapel clerk violated the ADA and RA, he also fails to state a claim. To state a claim under Title II of the ADA, a plaintiff must allege: "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007) (internal quotations omitted). To state a claim under Section 504 of RA, a plaintiff must allege he or she was: (1) an individual with a disability; (2) otherwise qualified to receive the benefit; (3) denied the benefits of the program solely by reason of his or her disability; and (4) the program receives federal financial assistance. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Because of the similarities between the laws and remedies available, a complaint that properly states a claim under Title II of the ADA also states a claim under Section 504 of the RA. *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

Here, Wilson has failed to state an ADA and/or RA claim against Randy. A plaintiff cannot assert a § 1983 claim against a defendant in their individual capacity to vindicate rights created by the ADA and the RA. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). And as discussed in this Court's previous screening order, the proper defendant

for a claim under Title II of the ADA and § 504 of the RA is the public entity responsible for the alleged discrimination. *See Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) (collecting cases); *Peace v. 850 Bryant St.*, 2019 WL 5423473, at *3 (N.D. Cal. 2019). State correctional facilities are "public entities." *See* 42 U.S.C. § 12131(1)(A) & (B); *Pa. Dep't. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Thus, Plaintiff has failed to state a claim against Randy under the ADA and/or RA. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *see also Vinson*, 288 F.3d at 1156.

### 3. Tablet Restriction

Wilson alleges his First Amendment rights were violated when he was temporarily prohibited from using his tablet[5] for communicating with individuals outside the prison. FAC ¶¶ 38, 39. Specifically, he states that Defendants Rivers and GTL (the vendor that provides his tablet), conspired to violate his First Amendment rights to "access to courts" and "freedom of association of family and friends," in retaliation for his "refusal to answer questions" related to a "random threat assessment. *Id.* ¶ 38. He also appears to allege Rivers suspended his tablet usage for allowing another inmate to use his tablet, a rule violation which Wilson alleges was false. *Id.* ¶ 42.

#### a. *Access to Courts and Freedom of Association*

First, Wilson has not alleged an access to courts claim. To state a claim for any violation of the right of access to the courts, a prisoner must plausibly allege an inadequacy in the prison's legal access program that caused him an actual injury. *See Casey v. Lewis*, 518 U.S. 343, 349–51 (1996). To prove an actual injury, a prisoner must show that the inadequacy in the prison's program hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement. *See id*. at 351, 354–55. Here, Wilson has failed to allege inadequate legal access. And even assuming he had, he has not

---

[5] Wilson states he uses the tablet for "phone, messaging, [and] movies." FAC ¶ 39.

shown that he was prevented from pursuing a non-frivolous claim because of the temporary suspension of his tablet privileges. Therefore, he has not stated an access to courts claim.

Second, Wilson has failed to state a "freedom of association" claim. Wilson has not alleged he was prevented from having visitation with outside individuals. Moreover, the Supreme Court has observed that "[a]n inmate does not retain rights inconsistent with proper incarceration," and that "freedom of association is among the rights *least compatible* with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (emphasis added); *see also Dunn v. Castro*, 621 F.3d 1196, 1202 (9th Cir. 2010). And "[w]hile prisoners generally have "right to communicate with persons outside prison walls, *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002), this right does not require use of a prison-issued tablet." *Poslof v. Arce*, 2025 WL 786356, at *12 (N.D. Cal. 2025). The "loss of telephone privileges does not constitute a constitutional violation given the availability of alternative means of communication by mail or in person." *Bryant v. Cortez*, 536 F. Supp. 2d 1160, 1167 (C.D. Cal. 2008) (citing *Overton*, 539 U.S. at 135); *see also Williams v. ICC Committee*, 812 F. Supp. 1029, 1034 (N.D. Cal. 1992) ("This court is aware of no authority to support a claim of constitutional violation due to the deprivation of telephone access for convicted prisoners."); *see also Anello v. Williams*, 2012 WL 2522280, at *12 (D. Or. 2012) ("[A]n inmate's ability to communicate with the outside world is not unconstitutionally restricted where prison officials restricted an inmate from making nonemergency calls."). Moreover, courts have found the temporary suspension of phone privileges related to disciplinary action does not violate the First Amendment. *See Osborne v. Clark Cnty. Sheriff's Off.*, 2017 WL 6558665, at *3 (W.D. Wash. 2017); *see also Cox v. Ashcroft*, 603 F. Supp. 2d 1261, 1270 (E.D. Cal. 2009) (holding "[a] 30-day suspension of telephone privileges related to disciplinary action does not amount to a First Amendment violation").

Finally, to the extent Wilson appears to allege he had no alternative means of communicating with outside individuals because he is indigent and thus unable afford

placing a traditional telephone call from prison or sending mail via the postal service,[6] the Ninth Circuit has stated, "[t]here is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls and the complaint alleges no facts from which one could conclude that the rate charged is so exorbitant as to deprive prisoners of phone access altogether." *Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000).

In sum, Plaintiff has failed to state a First Amendment claim based on denial of access to courts denial or freedom of association. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### b. Retaliation

Wilson also claims Rivers violated his First Amendment rights by suspending his tablet privileges in retaliation for Wilson's refusal to answer questions related to a "random threat assessment." FAC ¶ 38. First, as discussed in this Court's previous screening order, a mere refusal to answer the questions of a correctional officer is not "protected conduct" for purposes of a retaliation claim. *See e.g., Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1120 (S.D. Cal. 2007) (finding prisoner's assertion of "right to remain silent during the course of [a cell] search" was not "protected conduct"). In addition, Plaintiff's speculation that Rivers was responsible for deactivating his tablet is insufficient to allege Rivers caused the adverse action. *See Wood*, 753 F.3d at 905 ("Mere speculation that defendants acted out of retaliation is not sufficient."). Finally, Plaintiff has also failed to allege a lack of penological interest in suspending use of his tablet and failed to allege his speech was subsequently chilled. *See Watison*, 668 F.3d at 1114. Therefore, he has failed to state a First Amendment retaliation claim against Rivers. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

---

[6] The Court notes that while Wilson states he could not, alternatively, send mail or place a traditional phone call because he is indigent, he also admits that just prior to having his tablet privileges suspended, he had "pa[id] for 30 days of movies." FAC ¶ 39.

### c. Conspiracy

Wilson has also failed to state a claim that Rivers and GTL[7] conspired to retaliate against him because, for all the reasons discussed above, he has not alleged a First Amendment violation. *See Avalos*, 596 F.3d at 592 (stating conspiracy claim requires a plaintiff to show an "actual deprivation" of constitutional rights). Nor has he alleged any facts suggesting an agreement or meeting of the minds between Rivers and GTL. *Crowe*, 608 F.3d at 440. Therefore, he has failed to state a claim that Rivers and GTL conspired against him. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### d. False Rule Violation

Wilson appears to allege Rivers improperly revoked his tablet privileges based on a false accusation that Wilson had violated institutional rules by allowing another inmate to use his tablet. FAC ¶ 44. To the extent Plaintiff is seeks to assert he was punished based on a "false" allegation of a rule violation, he fails to state a claim. The falsification of a report, even when intentional, does not alone give rise to a claim under § 1983. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); *Scott v. Arvizo*, 2018 WL 6604345, at *8 (E.D. Cal. 2018) ("[A]s a general rule, Plaintiff has no protected interest against false incident reports or false testimony during disciplinary proceedings); *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (stating that "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports[ ]"). Therefore, Plaintiff has failed to state a claim based on the issuance of a false rule violation. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

---

[7] A private actor may be liable under § 1983 if they conspired or entered joint action with a state actor. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). Thus, for the purposes of screening only, the Court presumes state action on the part of GTL.

### 4. Denial of Incontinence Shower

Wilson alleges that Defendants Salazar, Castro, Guckdrier, Moreno, and Balladare "on different days and times depriv[ed] [him] an . . . incontinence shower." FAC ¶ 47. He asserts these Defendants violated (and conspired to violate) his Eighth Amendment rights. *Id.* ¶¶ 46–63. He also alleges they violated his rights under the ADA and RA. *Id.* ¶ 46.

#### a. Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments[.]" U.S. Const. amend. VIII. A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, *Farmer v. Brennan*, 511 U.S. 825, 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official acted, subjectively, with "deliberate indifference." *Id.* at 837 (citing *Wilson*, 501 U.S. at 297). "A prison official acts with 'deliberate indifference . . . only if [he or she] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004); *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi*, 391 F.3d at 1057 (quoting *Farmer*, 511 U.S. at 837). Neither negligence nor gross negligence is actionable under § 1983 in the prison context. *See Farmer*, 511 U.S. at 835–36, 836 n.4. Inmates have the right to adequate sanitation and hygiene. *See Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (amended by 135 F.3d 1318 (9th Cir. 1998)); *Anderson v. County of Kern*, 45 F.3d 1310, 1314–15 (9th Cir. 1995).

Here, Wilson fails to provide sufficient facts to state a claim against any Defendant. Other than Salazar, Wilson fails to identify specific occasion when he asked any other individual Defendant[8] for an incontinence shower and they denied it. Wilson's vague

---

[8] Wilson also makes vague references to an incident with "Defendant S. Migule," *see* FAC ¶¶ 51, 59, but it not clear that Migule ever denied Wilson an incontinence shower and as such he fails to state a claim.

allegations are conclusory and devoid of facts as to precisely what actions these Defendants took or what information they had about his condition (and when). Therefore, he has failed to state an Eighth Amendment claim against Castro, Guckdrier, Moreno, and Balladare. *See Iqbal*, 556 U.S. at 678.

As for Salazar, Wilson states that Salazar refused to release him for an incontinence shower on one occasion because Wilson did not have a "blue bag." FAC ¶ 51. On that occasion, Wilson had to wait until 2:00 p.m. to take a shower. *Id.* But, as discussed in this Court's previous order, Wilson has not alleged this short delay in showering amounted to a substantial risk of harm to him. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (stating courts must consider "the circumstances, nature, and duration of the deprivation" in determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim); *see also Anderson*, 45 F.3d at 1314–15 (noting temporary unconstitutional conditions of confinement do not rise to the level of constitutional violations); *see also Harris v. Jones*, 2021 WL 4950248, at *2 (7th Cir. 2021) (finding inmate finding that inmate who urinated on himself and had to wait one day for soap and three days for a clean jumpsuit did not show he was denied "minimal civilized measure of life's necessities").

Moreover, even assuming a substantial risk of harm existed, Wilson has failed to allege facts to show that Salazar was subjectively aware his request for an incontinence shower amounted to a "serious medical need." *See Toguchi*, 391 F.3d at 1057 ("A prison official acts with deliberate indifference . . . only if [he or she] knows of and disregards an excessive risk to inmate health and safety."); *see also Bartholomew v. Sisto*, 2013 WL

---

*See Iqbal*, 556 U.S. at 678 (stating a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Moreover, "Defendant Migule" is not identified as a defendant in the caption of the FAC or in the list of defendants provided by Plaintiff in the beginning of the FAC. *See* FAC at ¶¶ 8–22. The Court notes that Federal Rule of Civil Procedure 10(a) requires that plaintiffs include the names of all parties in the caption of the complaint. *See* Fed. R. Civ. P. 10(a).

4482837, at *4 (E.D. Cal. 2013) (finding no constitutional violation when inmate alleged he was denied a shower for a day after he urinated in his clothes). Therefore, he has not plausibly alleged Salazar acted with deliberate indifference.

For the above reasons, Wilson has failed to state an Eighth Amendment claim against any Defendant based on the denial or delay of incontinence showers. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### b. Conspiracy to Violate Eighth Amendment

Wilson also alleges Defendants Salazar, Castro, Guckdrier, Moreno, and Balladare "conspired" to violate his Eighth Amendment rights by depriving him of a morning incontinence shower. *See* FAC ¶¶ 47, 54, 59–60. But, as discussed above, Plaintiff has failed to plausibly allege an Eighth Amendment violation and as such he fails to state a conspiracy claim. *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (stating a conspiracy claim requires "an actual deprivation of constitutional rights."); *Woodrum v. Woodward Cnty. Okla.*, 866 F.2d 1121, 1126–27 (9th Cir. 1989) (explaining that § 1983 applies only to conspiracy claims that result in a deprivation of constitutional rights). In addition, as with his original complaint, Wilson again fails to allege "specific facts to support the existence of the claimed conspiracy" including "an express or implied agreement" or a "meeting of the minds" among the defendants to deprive him of a constitutional right. *See Avalos*, 596 F.3d at 592; *Woodrum*, 866 F.2d at 1126. His conclusory allegations of conspiracy are not sufficient to state a conspiracy claim. *See Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (stating a § 1983 conspiracy claim may not be based on conclusory allegations). Therefore, Wilson has failed to state an Eight Amendment conspiracy claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### c. ADA and RA

Finally, Wilson has failed to state an ADA or RA claim related to the denial or delay of incontinence showers against Salazar, Castro, Guckdrier, Moreno, and Balladare, or any individual defendant for that matter. As discussed above, a plaintiff cannot assert an ADA or RA claim against defendants in their individual capacities. *See Vinson*, 288 F.3d 1145,

1156 (9th Cir. 2002). The proper defendant for a claim under Title II of the ADA and § 504 of the RA is the public entity responsible for the alleged discrimination. *See Everson*, 556 F.3d at 501 n.7; *Peace*, 2019 WL 5423473, at *3 (N.D. Cal. 2019). Moreover, even if Wilson had named a proper defendant, he would still fail to state a claim because, as with his original complaint, the FAC devoid of facts showing that Wilson was delayed or denied a morning shower *because* of his disability. Plaintiff's conclusory statements unsupported by specific facts are insufficient to support a claim. *See, e.g.*, *Dean v. Sisolak*, 2022 WL 2763389, at *5 (D. Nev. 2022) (finding plaintiff's assertion that his rights under the ADA and RA were violated when various defendants "discriminated against [him] by reason of his disability" conclusory); *Regal v. Cnty. of Santa Clara*, 2023 WL 2266135, at *7 (N.D. Cal. 2023) (dismissing ADA and RA claims because the plaintiff failed to allege facts to show services were denied because of his disability). Therefore, Wilson has failed to state a claim against any individual Defendant under the ADA and/or RA. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *see also Vinson*, 288 F.3d at 1156.

**D.    No Leave to Amend**

Plaintiff was previously provided a short and plain statement of his pleading deficiencies (Doc. No. 4) and given an opportunity to amend those claims to no avail. The Court therefore finds granting further leave to amend would be futile. *See Gonzalez v. Planned Parenthood*, 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of . . . leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (internal quotation marks omitted) (second alteration in original)). As such the action is dismissed without leave to amend.

**CONCLUSION AND ORDER**

For the above reasons, the Court:

(1) **DISMISSES** this civil action without further leave to amend for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and

(2) **DIRECTS** the Clerk of Court to enter a final judgment of dismissal and close the file.

**IT IS SO ORDERED.**

Dated: June 18, 2025

HON. MICHAEL M. ANELLO
United States District Judge